90 S.W.3d 833 (2002)
In the Interest of T.L.K., a Child.
No. 04-01-00644-CV.
Court of Appeals of Texas, San Antonio.
September 11, 2002.
Rehearing Overruled October 21, 2002.
*835 Jaay D. Neal, Law Offices of Jaay D. Neal, San Antonio, for Appellant.
Karen El Rady, Louisville, KY, pro se.
John B. Worley, Rhonda Amkraut Pressley, Assistant Attorney General, Child Support Division, Austin, for Appellee.
Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.
Opinion by: CATHERINE STONE, Justice.
Anthony Kalenkosky ("Kalenkosky") appeals an order enforcing his child support obligation. Kalenkosky presents four issues on appeal contending: (1) the trial court erred in failing to exclude evidence of non-payment of child support prior to 1994; (2) the 1985 arrearage judgment was dormant and could not be included in the order; (3) no evidence was presented to establish that the attorney's fees awarded were reasonable and necessary; and (4) the presumption of validity of a record of child support payments violates the constitutional right to confront witnesses. We reverse the portion of the trial court's judgment awarding attorney's fees and render judgment that no attorney's fees are awarded. We affirm the remainder of the trial court's judgment.

BACKGROUND
Pursuant to a divorce decree entered November 30, 1983, Kalenkosky was ordered to pay Karen El Rady ("El Rady") child support in the amount of $250 per month beginning January 1, 1984, with a partial payment of $125 being due on December 15, 1983. Beginning June 15, 1984, the child support obligation increased to $300 per month.
On May 25, 1985, the trial court entered an arrearage judgment for $5,050 in unpaid child support. Kalenkosky was ordered to pay $1,700 of the arrearages by July 25, 1985. The remaining balance was to be paid in payments of $100 each month beginning September 1, 1985. It was further ordered that the payments be remitted to El Rady at the Bexar County Child Support Office.
On December 17, 1990, the trial court entered an agreed order providing that the Bexar County Child Support Office would no longer monitor the payments. The trial court ordered that all future payments be forwarded directly to El Rady.
On May 12, 2000, the Office of the Attorney General ("OAG") filed a motion for enforcement of child support. On March 14, 2001, the OAG filed an amended motion for enforcement. On May 11, 2001, the trial court held a hearing on the amended motion and found Kalenkosky guilty of contempt. The trial court further found that Kalenkosky was able to pay the child support as ordered from 1994 through March of 2001. The trial court took all other issues under advisement. On June 21, 2001, the trial court held another hearing and found that Kalenkosky was in arrears in the amount of $38,600 plus interest. The trial court committed Kalenkosky to jail until he paid the arrearages, but suspended the commitment on the condition that he pay the arrearages in accordance with the terms of the order. The trial court also ordered Kalenkosky to pay El Rady's attorney $1,500 in attorneys' fees. Kalenkosky appeals the trial court's *836 order.[2]

SPOLIATION PRESUMPTIONS
In his argument under his first issue, Kalenkosky contends that the trial court erred in failing to apply the spoliation presumption to credit him with: (1) an $8,000 payment allegedly made in 1990 contemporaneously with the parties' direct payment agreement; and (2) $7,200 in child support payments allegedly made from January 1, 1991, through December 1993. The OAG responds that the trial court did not abuse its discretion in refusing to apply a spoliation presumption.
A trial court has broad discretion to remedy spoliation of evidence. See Trevino v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998). Presumptions arise from the nonproduction of evidence under two circumstances: (1) the deliberate spoliation of relevant evidence, which may be rebutted by showing that the evidence in question was not destroyed with fraudulent intent or purpose; and (2) the failure of a party to produce relevant evidence or offer testimony to explain its non-production. See Aguirre v. South Texas Blood & Tissue Center, 2 S.W.3d 454, 457 (Tex.App.-San Antonio 1999, pet. denied); Wal-Mart Stores, Inc. v. Middleton, 982 S.W.2d 468, 470-71 (Tex.App.-San Antonio 1998, pet. denied).
Kalenkosky complains that the spoliation presumption should have been applied based on El Rady's destruction of bank deposit slips and failure to provide copies of additional checks and the calendars on which she noted the date she had received various payments. Kalenkosky's complaint is limited to the spoliation of evidence of payment before January of 1994.
With regard to the deposit slips, El Rady testified that she never retained deposit slips because the deposit slips do not prove anything with regard to the source of the funds deposited. This testimony would support a trial court's finding that the failure to keep the deposit slips was not the intentional destruction of evidence. See Brumfield v. Exxon Corp., 63 S.W.3d 912, 920 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (evidence that videotapes were routinely taped over defeats fraudulent intent); Crescendo Investments, Inc. v. Brice, 61 S.W.3d 465, 479 (Tex.App.-San Antonio 2001, pet. denied) (evidence that employee normally erased e-mails after reading them defeats fraudulent intent); Ordonez v. M.W. McCurdy & Co., 984 S.W.2d 264, 274 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (evidence that log books were thrown away as normal business practice defeats fraudulent intent). With regard to El Rady's failure to produce records of payment before 1994, El Rady testified that she only kept copies of some of the checks she received after January of 1994, and she had provided copies of those checks to the court and to the OAG. As to checks that Kalenkosky claimed to have sent before 1994, the trial court could have believed that no checks were sent; therefore, El Rady never had any evidence to produce in that regard *837 either in the form of copies of checks or notations on calendars.
Kalenkosky's first issue is overruled.

DORMANT JUDGMENT
In his second issue, Kalenkosky complains that the trial court erred in including the amount unpaid under a 1985 arrearage judgment in the amount of the final judgment. The OAG responds that Kalenkosky failed to plead limitations as an affirmative defense, and the issue was not tried by consent. The OAG further responds that the current statutes do not place a time limit on the confirmation of arrears. Finally, the OAG responds that the statute of limitations on reviving dormant judgments does not apply to an action brought by the OAG.
Kalenkosky elicited testimony from El Rady that she had not filed an abstract of judgment or a writ of execution in relation to the 1985 judgment. During closing arguments, Kalenkosky argued that the judgment was null and void because the statutes provided that a "judgment must be executed on within ten years and if it's not executed on within ten years it lapse[s], or has to be reissued." From the discussion between the trial court and Kalenkosky's attorney, the trial court understood Kalenkosky's argument regarding the ten year limit to enforce a judgment but believed that the ten year limit was not applicable to child support judgments. The OAG did not make any objection to Kalenkosky's argument. Instead, the OAG responded to the argument, stating:
MS. TORRES: As far as the 10 year rule I think that's applicable on the liens but not child support judgments, or any judgments for that matter. Since '93 there has also been a provision in the family code that the Court enter a cumulative judgment.
The trial court concluded:
THE COURT: He may be right in the issue but you all can research it, but I don't think child support judgments go along the same way that other judgments go, it's a different animal because of what it is. Even though it's a money judgment it's a child support judgment versus some other judgment. I think you're right there but if there is an issue you all can give me some case law on it, that's fine.
In view of the testimony elicited by Kalenkosky's attorney, his argument to the trial court regarding the ten year rule, and the OAG's response to that argument, we conclude that the issue was tried by consent. See Mastin v. Mastin, 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.) (finding trial by consent based on parties' arguments).
The OAG next responds that the current statutes do not provide any time limit on the confirmation of child support arrearages. The OAG is correct that section 157.005(b) no longer contains a jurisdictional limit on a trial court's ability to confirm the total amount of child support arrearages. See Tex. Fam.Code Ann. § 157.005(b) (Vernon Supp.2001).
Prior to the amendments, the Texas Supreme Court held that an action to enforce an order of child support came within the direct purview of the statute of limitations governing the revival and enforcement of judgments. Huff v. Huff, 648 S.W.2d 286, 289 (Tex.1983). After the holding in Huff, the Family Code was amended to enact a statutory ten-year provision, confirming the rule in Huff. In re Kuykendall, 957 S.W.2d 907, 910 (Tex.App.-Texarkana 1997, no pet.). That provision was included in section 14.41(b) of the Family Code and provided, "The court may not enter a *838 judgment for unpaid child support payments that were due and owing more than 10 years before the filing of the motion to render judgment under this section." Act of May 27, 1985, 69th Leg., R.S., ch. 232, § 9, 1985 Tex. Gen. Laws 1158, 1163. Section 14.41(a) of the Family Code also provided that the court could render an arrearage judgment for "any amount of child support unpaid and owing." Id.
In 1993, section 14.41(b) was amended to remove the ten-year limitation, and, as amended, section 14.41(b) provided that a trial court could "confirm the total amount of child support in arrears and enter judgment for past-due child support obligations if a motion to render judgment for arrearages" was filed within four years after the child became an adult or the child support obligation terminated pursuant to the decree or by operation of law. Act of June 18, 1993, 73rd Leg., R.S., ch. 798, § 14, 1993 Tex. Gen. Laws 3169, 3174. Section 14.41(a) also was amended and permitted the court to render "one cumulative judgment against an obligor for all child support unpaid and owing, including interest as provided by Section 14.34 of this code, and any balance owed on previously confirmed arrearages, lump sum, or retroactive support judgments." Id.
In 1995, section 14.41(b) was codified as section 157.005(b) of the Family Code, and section 14.41(a) was codified as section 157.263. Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 R.S. 113, 184, 177. As codified, section 157.263 provides:
§ 157.263 Confirmation of Arrearages
(a) If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment.
(b) A cumulative money judgment includes:
(1) unpaid child support not previously confirmed;
(2) the balance owed on previously confirmed arrearages or lump sum or retroactive support judgments;
(3) interest on the arrearages; and
(4) a statement that it is a cumulative judgment.
In 1999, section 157.005(b) was amended to remove the four-year limitation on confirmation and currently provides:
(b) The court retains jurisdiction to confirm the total amount of child support arrearages and render judgment for past-due child support until the date all current child support and medical support and child support arrearages, including interest and applicable fees and costs, have been paid.
In In re Kuykendall, the Texarkana court of appeals interpreted the effect of this series of amendments. 957 S.W.2d at 910-11. The Texarkana court noted that the amendments removed the ten-year limitation previously found in section 14.41 and that section 157.005(b) was not restricted to child support "unpaid and owing." 957 S.W.2d at 910. The Texarkana court reasoned that the elimination of the "and owing" language was important because a support payment beyond the ten-year limit was not one still "owing." Id. Accordingly, the Texarkana court concluded that a trial court could render a judgment confirming arrearage for all unpaid child support unhindered by a ten year limitation. Id. However, the Texarkana court also noted:
Pursuant to this construction the general ten-year dormancy statute then comes into play only when the arrearages are coalesced into a judgment confirming arrearages, after consideration of any offsets as authorized by the Family Code. We hold that the ten-year dormancy period then begins to run upon the signing *839 of this judgment confirming arrearages, and not from the due date of the individual payments.
Id. at 910. The Houston 14th court of appeals agreed with this reasoning in In re S.C.S., 48 S.W.3d 831, 835-36 (Tex.App.-Houston [14th Dist.] 2001, no pet.). The OAG contends that this language with regard to the ten-year period applying to previously entered arrearage judgments was dicta because the courts in those cases were not concerned with the effect of the ten-year limitation on an existing arrearage judgment.
We believe the dicta in the prior opinions is a correct interpretation of the statute. Although section 157.263 provides for a single cumulative money judgment, the judgment may only include "the balance owed on previously confirmed arrearages." Tex. Fam.Code Ann. § 157.263 (Vernon 1996) (emphasis added). The balance of a previously confirmed arrearage judgment would not be owed when the judgment became dormant after ten years pursuant to section 34.001 of the Texas Civil Practice and Remedies Code, if the judgment was not subject to being revived under section 31.006. See Tex. Civ. Prac. & Rem. Code Ann. §§ 31.006, 34.001 (Vernon 1997); In re Kuykendall, 957 S.W.2d at 910-11. If we were to hold otherwise, "we would be opening the door to the wholesale frustration of the ten-year statute of limitations for all final judgments in this important area of family law. Such a usurpation of the legislative function is beyond the jurisdiction of this [c]ourt." Huff, 648 S.W.2d at 289-90.
The only remaining question is whether the judgment is subject to being revived because the OAG was pursuing the enforcement of the child support obligation. The OAG contends that it is exempt from the two year limitation on the revival of judgments because section 16.061 of the Texas Civil Practice and Remedies Code provides that a right of action of the state is not barred by section 31.006. See Tex. Civ. Prac. & Rem.Code Ann. § 16.061 (Vernon 2001).
The OAG acknowledges that the Texas Supreme Court has held that the state's exemption from limitations does not apply to an action that is not brought for the use or benefit of the state. McNutt v. Cox, 133 Tex. 409, 129 S.W.2d 626, 627-28 (1939). In McNutt, the holder of a note sued its maker and defended against a limitations defense on the theory that the limitations period was tolled during the period of time the note was in the custody of the State Banking Commissioner. Id. at 627. The court rejected that theory, asserting, "The general rule is that where the suit, although brought in the name of the government, is for the use and benefit of private citizens, the statutes of limitation apply in the same manner as though the suit had been brought in the name of the real parties in interest." Id. at 628. Similarly, the exception in section 16.061 also does not apply when a state entity asserts a workers' compensation subrogation claim because the claim belongs to the injured employee and is not a "right of action" of the entity. See, e.g. State v. Airgas-Mid South, Inc., 83 S.W.3d 890, 891-92 (Tex.App.-Texarkana 2002, no pet. h.); State v. Esquivel, 92 S.W.3d 17, 23 (Tex.App.-El Paso 2002, no pet. h.); Harris County v. Carr, 11 S.W.3d 342, 344 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Therefore, the critical question is whether the OAG is asserting a right of action of the state by bringing an action for the use and benefit of the state when it seeks to enforce a child support obligation.
The OAG generally enforces child support under an assignment of the *840 support rights. See Tex. Fam.Code Ann. § 231.104 (Vernon Supp.2001); see also In re A.M.E., 71 S.W.3d 401, 402-03 (Tex. App.-San Antonio 2001, no pet.). However, the Family Code clearly provides that an attorney employed to enforce the child support obligation "represents the interest of the state and not the interest of any other party." Tex. Fam.Code Ann. § 231.109 (Vernon 1996). This court previously has recognized the state's independent justiciable interest or personal stake in child support enforcement proceedings as follows:
The Attorney General is authorized by statute to `provide services for the benefit of a child without regard to whether the child has received public assistance.' This authority has evolved over the years to comply with federal welfare reform law, which sets standards for the states to increase efficiency and uniformity in child support enforcement proceedings. Texas, in meeting these standards, is able to participate in federal matching-grant programs for this purpose. Thus, the Attorney General has a broader interest in the uniform enforcement of child support than the individual parties who are joined in this controversy. That interest is independent of whatever monetary interest the State may have invested, if any, in seeking to ensure the best interest of the children in question.
In re M.C.R., 55 S.W.3d 104, 107 (Tex. App.-San Antonio 2001, no pet.) (citations omitted). When the OAG brings an action to enforce child support, it is performing a government function. Reyna v. Attorney General of Texas, 863 S.W.2d 558, 559 (Tex.App.-Fort Worth 1993, no pet.). Just as laches is not an available defense against the OAG, see id., the limitations defense that otherwise would be available under section 31.006 is not applicable to an action brought by the OAG to enforce child support because the OAG is asserting a right of action of the state.
Kalenkosky's second issue is overruled.

ATTORNEYS' FEES
In his third issue, Kalenkosky contends that the trial court erred in awarding attorney's fees to El Rady's attorney because the evidence was insufficient to prove that the attorney's fees were reasonable and necessary. The OAG does not address this issue because it has no legal interest in the controversy over the award in favor of El Rady's attorney. El Rady did not file a separate brief.
During trial, El Rady testified that she hired a private attorney to assist her in pursuing the arrearage judgment because of the delays in setting a hearing. El Rady stated that she agreed to pay her attorney $150 an hour and she had paid a retainer of $600. El Rady's attorney testified as follows:
MS. MARTINEZ: My name is Denise Martinez, I'm an attorney licensed in the State of Texas since 1981. I agreed to represent Ms. El Rady. My regular and customary fees are $150 an hour. I anticipate that the fee by the conclusion of this hearing when it's finished this morning will be $1,650 and Ms. El Rady has paid me $650, that includes responding to discovery, reviewing the file, two court appearances prior to this court appearance, Your Honor. Pass myself for cross examination.
El Rady's attorney was not cross-examined. Kalenkosky's attorney moved for an instructed verdict based on the failure by El Rady's attorney to lay the proper predicate for the award of attorney's fees "in that she did not testify that her reasonable hourly rate was reasonable and necessary in Bexar County, Texas." The trial court stated that he would deal with the attorney's *841 fees matter "at the end." At the conclusion of the hearing, Kalenkosky's attorney repeated his objection to the award of attorney's fees "because there wasn't any testimony supporting any attorney fees."
Absent good cause, a trial court is required to order the respondent to pay the movant's reasonable attorney's fees if the court finds that the respondent has failed to make child support payments. Tex. Fam.Code Ann. § 157.167 (Vernon Supp. 2001). Kalenkosky contends that the trial court erred in ordering him to pay El Rady's attorney's fees because no evidence was introduced to prove that the attorney's fees were reasonable.
"[R]easonableness of attorney's fees is a question of fact to be determined by the trier of the facts and must be supported by competent evidence." Peeples v. Peeples, 562 S.W.2d 503, 506 (Tex. Civ.App.-San Antonio 1978, no writ). Expert testimony is necessary to establish reasonableness of attorney's fees. See Woollett v. Matyastik, 23 S.W.3d 48, 52 (Tex.App.-Austin 2000, pet. denied). In general, a trial court may not adjudicate reasonableness on judicial knowledge and without the benefit of evidence. Great Am. Reserve Ins. Co. v. Britton, 406 S.W.2d 901, 907 (Tex.1966); Woollett, 23 S.W.3d at 52. Chapter 38 of the Texas Civil Practice and Remedies Code contains an exception to this general rule; however, the presumption of reasonableness under Chapter 38 is only applicable to the types of claim described in section 38.001. TEX. CIV. PRAC. & REM.CODE ANN. § § 38.001, et seq. (Vernon 1997). Because the underlying lawsuit is not a claim described in section 38.001, the trial court erred in awarding attorney's fees to El Rady's attorney absent any evidence to support a finding that such fees were reasonable. See Valdez v. Valdez, 930 S.W.2d 725, 732 (Tex.App.-Houston [1st Dist.] 1996, no writ) (holding ability to take judicial notice and presumption of reasonableness of attorneys' fees not applicable in child support case).
Kalenkosky's third issue is sustained.

PRESUMPTION OF VALIDITY
In his fourth issue, Kalenkosky contends that he was deprived of his constitutional right to confront witnesses by the presumed validity of the pay history attached to the motion to enforce. Kalenkosky asserts this issue as a challenge to the trial court's contempt findings. Appellate courts do not have jurisdiction to review contempt proceedings on direct appeal. In re A.M., 974 S.W.2d 857, 861 (Tex.App.-San Antonio 1998, no pet.). Accordingly, we do not have jurisdiction to address this issue on appeal.
Kalenkosky's fourth issue is dismissed for lack of jurisdiction.

CONCLUSION
That portion of the trial court judgment awarding attorney's fees to Denise Martinez is reversed, and judgment is rendered that no attorney's fees are awarded to Denise Martinez. The remainder of the trial court's judgment is affirmed.
NOTES
[2] The OAG contends that this court does not have jurisdiction to consider this appeal because Kalenkosky filed his notice of appeal before the trial court entered its final order based on the interest calculations that the attorneys were required to make in determining that the total amount of the arrearages was $73,817.50. "[A] prematurely filed notice of appeal is effective and deemed filed on the date of, but after, the event that begins the period for perfecting the appeal." Tex.R.App. P. 27.1(a). Therefore, even assuming that the order signed on June 26, 2001, was not a final order, the trial court entered the order that the OAG contends is the final order on February 27, 2002, and the notice of appeal would be deemed filed on that date, timely perfecting this appeal.