**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NORMAN H. ROWE,

  Plaintiff-Appellant,

v.

ALBERTSONS, INC.,

  Defendant-Appellee.

No. 02-4186
(D. Utah)
(D.Ct. No. 2:01-CV-78-B)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

Norman H. Rowe, a pro se[1] Utah resident, appeals the district court's grant

of summary judgment to Albertsons, Inc. and the subsequent dismissal of his

negligence claims arising from a slip and fall in one of Albertsons' Texas stores

in May 2000.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm

the judgment of the district court in all respects but one.  We reverse and remand

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Because Rowe proceeds *pro se*, we construe his pleadings liberally.  *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

for the limited purpose of directing the district court to determine whether a spoliation presumption applies to a recycled surveillance videotape.

## BACKGROUND

On May 23, 2000, while on a business trip, Rowe entered one of Albertsons' grocery stores in Arlington, Texas. At approximately 7 p.m., he slipped and fell on a wet substance near the meat/fish cabinet. Immediately following his fall, Rowe was approached by the manager on duty to determine if he was injured. The manager then directed him to a nearby medical clinic. As a result of the accident, Rowe claims he suffered a hernia and priapism.[2]

Rowe filed suit against Albertsons on February 2, 2001, alleging: (1) negligence in causing the accident; and (2) negligent infliction of emotional distress for not assuming responsibility for the accident. The case was referred to a magistrate judge who, after ruling against Rowe on several discovery matters, recused upon Rowe's request. The matter was re-assigned to another magistrate judge who, on March 29, 2002, in response to Albertsons' motion for summary judgment, entered a comprehensive "Report and Recommendation Regarding Motion for Summary Judgment" recommending that Alberstons' motion be

---

[2] Priapism is "a persistent erection of the penis, accompanied by pain and tenderness, resulting from a pathological condition rather than sexual desire. . . ." THOMAS LATHROP STEDMAN, STEDMAN'S MEDICAL DICTIONARY 1443 (27th ed. 2000).

granted. On the same day, the magistrate judge issued an order denying Rowe's pending discovery motions. Rowe objected, but after *de novo* review, the district judge adopted the report and entered summary judgment dismissing the case, denying pending motions as moot. Rowe appealed. His desultory filings distill into three arguments: (1) the district court erred in granting summary judgment; (2) it abused its discretion in denying two of his motions to amend his complaint; and (3) the magistrate and district judges abused their discretion by denying various discovery requests.

### DISCUSSION

We review a grant of summary judgment *de novo*. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997). Utah applies the "most significant relationship" approach as described in Section 145 of Restatement (Second) of Conflict of Laws. *Waddoups v. Almagamated Sugar Co.*, 54 P.3d 1054, 1059-60 (Utah 2002). This approach requires consideration of several factors in determining which substantive law to apply: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the

place where the relationship, if any, between the parties is centered." *Id*. at 1060 (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)). "Further, these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Because the slip and fall incident occurred in Texas and Albertsons' place of business is in Texas, we apply Texas substantive law.

The elements of a slip and fall negligence action under Texas law are: (1) actual or constructive knowledge of some condition on the premises by the owner/operator; (2) the condition created an unreasonable risk of harm; (3) the owner/operator failed to exercise reasonable care to reduce or eliminate the risk; and (4) that failure proximately caused plaintiff's injuries. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). After *de novo* review of the arguments and record, we agree with the magistrate's conclusion, adopted by the district court, that Rowe failed to present any evidence Albertsons had either actual or constructive knowledge of the dangerous condition on its premises or failed to exercise reasonable care to mitigate or eliminate the risk. However, because the record indicates that one reason for Rowe's failures may have been the unavailability of a videotape showing the condition of the floor around the time of the accident, we must remand for a hearing and further findings.

### A. *The Effect of a Charge of Spoliation of Evidence*

The district court accepted the magistrate's conclusion that Rowe failed to establish "*[d]efendant's actual or constructive knowledge of the condition* leading to his fall" and the "*[d]uration* of that actual or constructive knowledge sufficient to allow remediation." (R., Vol. III Doc. 108 at 7.) Rowe admitted he neither knew whether Albertsons' employees had knowledge of the liquid on the floor, nor how long the liquid had been on the floor. However, Albertsons admits the store videotape from that evening, evidence which may have supported his claims, could not be provided because it was intentionally recycled. The failure to produce the videotape and a charge of spoliation of evidence was contained in several of Rowe's discovery motions rejected by the district court.

The doctrine of spoliation refers to the improper intentional destruction of evidence relevant to a case. *Malone v. Foster,* 956 S.W.2d 573, 577 (Tex.App. Dallas 1997). Its purpose is to prevent the subversion of the discovery process and the fair administration of justice by destroying evidence to defeat a claim. *See Trevino v. Ortega,* 969 S.W.2d 950, 955 (Tex. 1998)(Baker, J. concurring). "Presumptions arise from the nonproduction of evidence under two circumstances: (1) the deliberate spoliation of relevant evidence, which may be rebutted by showing that the evidence in question was not destroyed with fraudulent intent or purpose; and (2) the failure of a party to produce relevant

evidence or offer testimony to explain its non-production." *In re T.L.K.*, 90 S.W.3d 833, 836 (Tex.App. San Antonio 2002). "Under the first circumstance, a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case." *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003). Thus, the initial inquiry is whether "the non-producing party had a duty to preserve the evidence in question." *Id*. The person asserting the presumption must show that "the party who destroyed the evidence had notice both of the potential claim and of the evidence's potential relevance." *Id*. (*quoting* 1 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 301.06 at 301-28.3 (2d ed. 2003)). Notice of a claim "does not refer to any particular statistical probability that litigation will occur; rather, it simply means that litigation is more than merely an abstract possibility or unwarranted fear. The underlying inquiry is whether it was reasonable for the investigating party to anticipate litigation and prepare accordingly." *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex. 1993) (Necht, J., dissenting) (discussing notice of a claim in a difficult context).

In *Aguirre v. South Tex. Blood & Tissue Ctr.*, 2 S.W.3d 454 (Tex. App. San Antonio 1999), a Texas Court of Appeals upheld summary judgment when the plaintiff failed to provide evidence of the causation element of her negligence claim–even though her failure was arguably due to the defendant's destruction of

records in the ordinary course of business. On review, the court stated:

> Because Aguirre raised the issue of entitlement to a presumption in her response to summary judgment, and the trial court nonetheless granted summary judgment, we presume that the trial court considered and rejected Aguirre's claim for a presumption **since a presumption would have precluded summary judgment**. Thus, our review of the granting of summary judgment is slightly modified. Because the trial court has the discretion to grant a spoliation presumption, we first must review the trial court's implied rejection of Aguirre's request for a presumption for an abuse of discretion. Finding no abuse of discretion, we proceed under the no-evidence standard to determine whether, without the presumption, more than a scintilla of evidence exists precluding summary judgment.

*Id.* at 457 (emphasis added). The court determined that because the defendant did not have "actual notice that it would be called to defend a lawsuit" prior to the destruction, and "no reasonable expectation" that it would be called to defend, the trial court did not err in finding Aguirre was not entitled to a presumption instruction. *Id*. at 457-58.

Assuming, as we must under Texas law, that the district court concluded Rowe would not be entitled to a presumption, we must determine whether this conclusion constitutes an abuse of discretion.

Heather Enloe, the night manager on duty the evening of Rowe's fall, testified that: (1) after his fall, Rowe informed her "he wanted to keep [his shoe] for evidence . . . ." (Appellant's Br., Ex. 3 at 12); (2) she reviewed the surveillance tape that evening and again the next day with the store director, Bill

-7-

Miller, to see if the slip and fall had been captured on tape on the night of the accident; and (3) "[t]here was nothing on the videotape that I saw. The only thing that I saw with him in it was him at the endcap and me coming—walking up to him. That's the only thing and it just came back around to where I was getting information." (Appellant's Br., Ex. 3 at 34.) When asked if the "three droplets" of liquid on the floor were apparent on the surveillance tape, she stated, "No. You couldn't see that...It's just so far away[.]" (*Id.*)

According to Enloe's written report regarding the accident, Rowe "returned [the next day] with the medical paper in his hand asking for the store director. I notified [him that] papers had been returned in [sic] to [corporate] and now is out of our hands and that [corporate] will contact him. And he notified me that he will have counsel." (*Id.* at 106.) Enloe believed, as of May 24, 2000, "there was going to be a dispute with Albertsons." (*Id.*)

Although Enloe marked the videotape for review, Miller included it with tapes to be recycled within sixty days. He did so because it was inconsequential: "[i]n other words if I had viewed it and I could actually see the incident on the tape, then we would have retained the tape. If not, then I would have put it back in to continue to record with it." (Appellant's Br., Ex. 6 at 49.) However, he testified that if he intended to keep the tape for evidence, he "wouldn't re-record on them ever." (*Id.*) Thus, the testimony of the store employees raises a question

of fact whether it was reasonable for Albertsons to anticipate litigation,[3] and if so, whether Albertsons can demonstrate the tape was not destroyed with fraudulent intent or purpose.[4]

Unfortunately, the record does not reveal an answer. The only time the court addressed the videotape issue is in an early hearing. There, the magistrate stated:

> The Court: Have you deposed Mr. Miller? . . . Why don't you ask him that question and see if there was anything on the tape? . . . Why the decision was made not to preserve the tapes . . . . Then get it all and then in front of the jury present it . . . . The point is I can't force them and order them to present a tape that doesn't exist, Mr. Rowe.

(R., Vol. VII at 20-21.) However, after this magistrate recused himself (at Rowe's request) two months later, Rowe requested sanctions against Albertsons because "Defendant's [sic] have destroyed evidence, falsified records [and] committed perjury[.]" (R., Vol. III, Doc. 96 at 5.) The newly-assigned magistrate denied this motion in his Order on Pending Motions dated March 29, 2002. The Order deemed the motion a request for discovery; it did not address a possible spoliation presumption as it related to the summary judgment recommendation issued on the same day.

_____

[3] We decline to find notice of a potential lawsuit based merely on the not-uncommon threat "you will hear from my lawyer."

[4] There is no evidence Miller and Enloe were in any way especially equipped to recognize relevant evidence.

As the Texas Supreme Court has noted, "there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case." *Trevino*, 969 S.W.2d at 953. There is no record of the trial court exercising its broad discretion on this matter and we do not wish to usurp the role of the trial judge in such a fact intensive inquiry. Therefore, we remand for the limited purpose of allowing the district court to review relevant evidence, hear cogent argument and determine whether a spoliation presumption applies to the recycled videotape. For this reason only, we reverse the grant of summary judgment.

### B.    *Remaining Issues*

Rowe argues the district court erred in denying his motions to amend his complaint. We review for abuse of discretion. *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999). "A party may amend the pleadings after the time for amending as a matter of course 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" *Hom v. Squire* 81 F.3d 969, 973 (10th Cir. 1996) (quoting FED. R. CIV. P. 15(a)). Rowe moved to amend his complaint to include damages for emotional distress caused by the litigation and to add new individuals as parties for alleged fraud and perjury. These motions were filed more than a month after the deadline to amend the pleadings. The district court denied these

motions reasoning not only were they tardy, but they also sought "to add new claims of dubious validity and . . . add additional parties." (R., Vol. III, Doc. 107 at 4.) The district court did not abuse its discretion by denying Rowe's belated motions. *See Hom*, 81 F.3d at 973 (denying a motion to amend to add a new claim shortly before trial).

Rowe contends the district court also erred when denying certain discovery motions other than the spoliation claim discussed above. Discovery rulings are generally within the sound discretion of the trial court, and we review only for abuse of discretion. *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 858 (10th Cir. 1993). Rowe filed various motions to compel Albertsons to provide information that he asserts Albertsons refused to produce. He also moved to depose three Albertsons' executives. After reviewing the record, we find no abuse of discretion regarding the rulings on these motions.

Finally, Rowe argues the magistrate judge erred in denying him the opportunity to depose an expert witness needed to establish a causal link between his alleged priapism and the slip and fall. The district court affirmed this ruling. The extended deadline for submitting expert witness reports was January 11, 2002. Rowe sought to depose an expert on February 12, 2002. However, he failed to file an expert witness report as required under FED. R. CIV. P. 26(a)(2) even though the magistrate specifically informed him it was a necessary predicate for the admission

of such evidence. Rowe did not provide the required expert report to opposing counsel until February 19, 2002, and it was not received by the court until March 12, 2002, after the proposed date for the deposition and well after the January 11, 2002 deadline. We find no abuse of discretion in granting Albertsons' protective order denying Rowe the opportunity to depose his expert witness.

## CONCLUSION

We REVERSE the district court's grant of summary judgment and REMAND for further findings regarding the application of a spoliation presumption to the recycled videotape. We AFFIRM the district court's disposition of the remainder of Rowe's claims.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge