Affirmed as Modified and Opinion filed December 21, 2006








Affirmed as Modified and Opinion filed December 21, 2006. 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00918-CV

____________

 

MARY HELEN AND GILFRED CHARETTE, Appellants

 

V.

 

KASSIE AND JOHN BLAKE FITZGERALD, Appellees

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 04-41122

 



 

O P I N I O N








This appeal arises from a residential landlord-tenant
dispute.  The tenants brought suit against their landlords for wrongful
eviction, unauthorized seizure of personal property, wrongful lockout, and
breach of contract.  The landlords counterclaimed alleging the tenants had
abandoned the rental property and breached the lease agreement.  The trial
court found that the tenants did not breach the lease agreement and that the
landlords wrongfully evicted the tenants in violation of section 92.0081 of the
Texas Property Code.  The trial court awarded the tenants statutory penalties
and attorney=s fees.  The landlords appeal contending that (1) the
trial court erred in finding the Texas Property Code violation because the tenants
abandoned the property and breached the lease agreement; and (2) the evidence
is legally and factually insufficient to support the attorney=s fees award. 
Finding merit only in the latter argument, we modify the judgment to omit the
award of attorney=s fees, and affirm the judgment as
modified.

I.  Factual and Procedural
Background

On July 8, 2003, appellants/landlords Mary Helen and
Gilfred Charette entered into a residential lease agreement (the ALease@) with
appellees/tenants Kassie and John Blake Fitzgerald for the rental of a house
located at 4036 Amherst, Houston, Harris County, Texas (hereinafter the ARental Property@).  The
lease term began on July 31, 2003 and ran through July 30, 2004.  Under the
Lease, the Fitzgeralds paid both a security deposit of $1,975.00 and a pet
deposit of $1,000, $500.00 of which was non-refundable.  In addition, during
the term of the Lease, the Fitzgeralds timely paid rent of $1,850.00 per month
for every month of the lease term. 

In midBMay 2004, the Fitzgeralds gave written
notice of their intent to terminate the tenancy at the end of the lease term,
as provided in the Lease.  This notice was given and received more than sixty
days before the termination date.  Shortly after the Fitzgeralds gave the
notice, the Charettes= adult daughter, Robbie Gail Charette, who
assisted her parents in managing the Rental Property, sent an e-mail to the Fitzgeralds
acknowledging the timely notice of termination.  In this May 25, 2004 e-mail,
Robbie Charette urged the Fitzgeralds to reconsider.  The Fitzgeralds, however,
did not change their minds and, on June 14, 2004, they gave written notice to
the Charettes of their forwarding address.  The Charettes immediately began
seeking new tenants for the Rental Property. 








On or about June 23, 2004, the Fitzgeralds began to move
their belongings from the Rental Property to their new residence.  On June 24,
2004, the Fitzgeralds timely paid their last month=s rent to the
Charettes to cover the amount owing through the end of the lease term (July 30,
2004).  

Even though the Fitzgeralds had paid rent through the end
of the lease term, and even though they still had many of their belongings at
the Rental Property, the Charettes requested permission to paint and clean the
Rental Property to make it more presentable for showing to prospective
tenants.  To accommodate the Charettes in their plans, on June 29, 2004, the
Fitzgeralds agreed to move the remainder of their personal property to the sun
room, though, under the Lease, they had no obligation to do so.  In
addition, as another accommodation to the Charettes, the Fitzgeralds agreed to
board their pets while they went on vacation from July 3, 2004 through July 15,
2004, to facilitate the Charettes= plans to show the
Rental Property to prospective tenants.  The Fitzgeralds had no contractual
obligation to make these accommodations and apparently did so purely out of a
benevolent spirit.

Although Robbie Charette spoke to the Fitzgeralds the day
before they left for vacation (July 2, 2004), she wrote a letter to them the
next day (July 3, 2004), declaring them in default of the Lease.  In the letter
Robbie Charette, on behalf of the Charettes, demanded that the Fitzgeralds
remove the remainder of their possessions from the premises immediately.  Four
days later (on July 7, 2004), while the Fitzgeralds were still on vacation,
Robbie Charette wrote them again demanding that they immediately vacate the
Rental Property, and informing them that the locks would be changed if the
Lease Adefaults@ were not cured
before noon on July 10, 2004.  Without even giving the Fitzgeralds a chance to
return from their vacation, Robbie Charette changed the locks on the doors,
effectively seizing the Fitzgeralds= personal
possessions. She wrote them another letter, this time demanding approximately
$1,685.87 for repairs to the Rental Property.  At this time, the Fitzgeralds
were not only  maintaining possessions at the Rental Property, but also were
current in their rent and the lease term had not expired.








On July 21, 2004, the Charettes filed an AOriginal Petition
for Forcible Detainer@ seeking to oust the Fitzgeralds from the
Rental Property.[1] 
A few weeks later, on August 3, 2004, the Fitzgeralds filed an AOriginal Petition
and Application for Temporary Restraining Order and Temporary Injunction,@ alleging claims
for breach of contract, wrongful eviction, wrongful lockout, unlawful removal
of their personal property, and wrongful refusal to refund their security
deposit.  In addition, the Fitzgeralds sought return of the personal property
the Charettes had seized from the Rental Property while they were on vacation. 
The Charettes filed a counterclaim for breach of contract and sought to recover
for alleged damages to the Rental Property.  The Charettes also sought to
recover amounts they claimed were owing under the Lease, including a Are-letting charge@ of $2,500,
ostensibly due to the Fitzgeralds= Aabandonment@ of the Rental
Property.  The Charettes eventually returned the personal property they had
seized during the wrongful eviction.

On May 20, 2005, the trial court filed extensive findings
of fact and conclusions of law, finding, among other things, that the
Fitzgeralds were liable to the Charettes for $3,180.45, which included (1) $624.90
in damages to the Rental Property; (2) $55.55 in damages to replace the garage
remote controls; and (3) a Are-letting fee@ of $2500
attributable to the Fitzgeralds= Aabandonment@ of the Property
on June 23, 2004.  The trial court also found that the Charettes wrongfully
retained the Fitzgeralds= security deposit and pet deposit of
$2,975, which the trial court determined resulted in the Fitzgeralds owing
$205.45 to the Charettes.  








The trial court concluded that the Charettes violated
section 92.0081 of the Texas Property Code by wrongfully preventing the
Fitzgeralds from entering the Rental Property. The trial court awarded the
Fitzgeralds  $2,144.55 in statutory penalties (after offsetting the $205.45)
and $25, 422.90 in attorney=s fees.  The trial court also awarded the
Fitzgeralds $7,500 in attorney=s fees should the Charettes appeal to the
court of appeals, and another  $10,000 should the case be appealed to the Texas
Supreme Court.  

The Charettes timely filed their notice of appeal.  The
Fitzgeralds filed a notice of cross-appeal, which the Charettes have moved to
dismiss as untimely.

II.  Jurisdiction Over
cross-appeal

The
Fitzgeralds have attempted to bring a cross-appeal in this case.  The Charettes
have filed a AMotion to Strike Cross-Appellants= Brief and to Dismiss Cross-Appeal@ in which they contend that the
Fitzgeralds failed to timely file their notice of cross-appeal.  The Charettes
filed their notice of appeal on August 19, 2005.  The Fitzgeralds were required
to file any notice of cross-appeal on or before September 2, 2005.  See Tex. R. App. P. 26.1 (d).  The notice
of cross-appeal was not filed until October 6, 2005.  Although the Fitzgeralds
contend that they timely filed their notice of cross-appeal, there is no
evidence in the record, other than their counsel=s affidavit, to show that this notice
was timely filed.  

The Fitzgeralds have not established that
their notice of cross-appeal was timely filed. Because the Fitzgeralds failed
to timely file a notice of cross-appeal, we lack jurisdiction to entertain
their issues as stated in their cross-appellants= brief.  Therefore, we grant the Charettes= motion to dismiss the cross-appeal.  See Tex. R. App. P. 42.3 (a).  Having
dismissed the Fitzgeralds= cross-appeal, we do not reach any of their
cross-issues.

 

III.  Issues and Analysis

 

A.      Did the trial court err in
concluding that the landlords violated section 92.0081 of the Texas Property
Code by preventing the tenants from entering the leased property?

 








In their first
issue, the Charettes challenge the trial court=s finding that
they violated section 92.0081(b) of the Texas Property Code by changing the
locks on the doors of the Rental Property on July 10, 2004, at a time when rent
had been paid.  This part of the statute provides as follows: 

(b) A landlord may not
intentionally prevent a tenant from entering the leased premises except by
judicial process unless the exclusion results from:

(1) bona fide repairs,
construction, or an emergency;

(2) removing the contents of
premises abandoned by a tenant; or

(3) changing the door locks of a
tenant who is delinquent in paying at least part of the rent.

 

Tex. Prop. Code Ann. ' 92.0081(b) (Vernon Supp. 2006).  In
regard to the Fitzgeralds= claims under section 92.0081, the trial
court made the following conclusions of law: 

(10)    The Charettes changed the
locks on the doors of the Rental Property on July 10, 2004.

(11)    The Charettes intentionally
prevented the Fitzgeralds from entering the Rental Property on and after July
10, 2004. 

(12)    The Fitzgeralds were not
delinquent in their rent as of July 10, 2004.

(13)    The Fitzgeralds provided
the Charettes unlimited access to the Rental Property to make repairs or
perform necessary construction in June and July of 2004. 

(14)    The Charettes do not argue
that an emergency existed on the Rental Property in July 2004.

(15)    The Charettes did not remove
the Fitzgeralds= personal items from the Rental
Property. 

(16)    The Charettes locked the
Fitzgeralds out of the home at 4036 Amherst for reasons other than (a) to make
bona fide repairs, construction, or an emergency; (b) to remove the contents of
the premises abandoned by a tenant;  or (c) to change the door locks of a
tenant who is delinquent in paying at least a part of the rent. 

(17)    The Charettes violated
subsection (b) of Texas Property Code, section 92.0081(b). 

(19)    The Rental Property was not
the Fitzgeralds= dwelling after June 23, 2004,
because they are deemed to have Aabandoned@ the Rental Property on that date. 








(25)    By the plain language of
the Lease, the Fitzgeralds are deemed to have abandoned the Rental Property on
June 23, 2004.[2]


 

On appeal, a reviewing court will uphold conclusions of law
if the trial court=s judgment can be sustained on any legal
theory supported by the evidence.  Spiller v. Spiller, 901 S.W.2d 553,
556 (Tex. App.CSan Antonio 1995, writ denied).  Conclusions of law
will not be reversed, unless they are erroneous as a matter of law. Johnston
v. McKinney American, Inc., 9 S.W.3d 271, 277 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  In addition, a trial court=s conclusions of
law are reviewed de novo as legal questions.  Id.  Incorrect conclusions
of law will not require a reversal, however, if the controlling finding of
facts will support a correct legal theory. Id.; Stable Energy, L.P.
v. Newberry, 999 S.W.2d 538, 547 (Tex. App.CAustin 1999, pet.
denied).








The Charettes argue they were justified in changing the
locks on the Rental Property and preventing the Fitzgeralds from entering the
Rental Property because the Fitzgeralds had abandoned the Property.  In support
of this argument, the Charettes urge this court to conclude that if a landlord
can lock out a tenant who retains personal property on the leased premises
under section 92.0081(b)(3) for failure to pay rent, then a landlord should be
able to do the same under section 92.0081(b)(2) in situations in which the
tenant, though having fully paid all rent, has moved into another dwelling,
thereby Aabandoning@ the leased
premises.  The Charettes contend that to require a landlord to remove the
personal property after a tenant has Aabandoned@ the premises is
inequitable because the landlord must incur additional costs in removing the
property before preventing a tenant from entering the premises.  We find no
merit in the Charettes= argument.

The Fitzgeralds did not abandon the Rental Property within
the meaning of the Texas Property Code.  The plain meaning of the statute
undermines the Charettes= argument.  When, as in this case, the
language of the statute is unambiguous, we must seek the legislative intent as
found in the plain and common meaning of the words and terms used. 
Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994); Monsanto Co. v.
Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993).  We may not
by implication enlarge the meaning of any word in the statute beyond its
ordinary meaning.  Sorokolit, 889 S.W.2d at 241.  We must presume that
every word in a statute has been used for a purpose and that every word
excluded was excluded for a purpose.  Sw. Bell Tel. Co. v. Public Util.
Comm'n, 888 S.W.2d 921, 926 (Tex. App.CAustin 1994, writ
denied).  








The Charettes locked the Fitzgeralds out of the Rental
Property for reasons other than (a) to make bona fide repairs, construction, or
an emergency; (b) to remove the contents of the premises abandoned by a tenant;
or (c) to change the door locks of a tenant who is delinquent in paying at
least a part of the rent.  See Tex.
Prop. Code Ann. ' 92.0081(b) (Vernon Supp. 2006).  We
cannot expand the language in section 92.0081(b) to allow a landlord to prevent
a tenant from entering the leased property even though the landlord does not do
so to remove the contents of the tenant=s personal
property.  It is undisputed that the Fitzgeralds had personal property on the
leased premises at the time the Charettes changed the locks.  It is also
undisputed that the Charettes changed the locks Cnot because of
some reason in section 92.0081(b)C but because of
their insistence that the Fitzgeralds had Aabandoned@ the Property in
violation of paragraph 24 of the Lease.[3] 
Thus, we conclude that the trial court did not err in determining that the
Charettes violated section 92.0081(b) of the Texas Property Code.  We overrule
the Charettes= first issue.  

B.      Is the evidence
legally and factually sufficient to support the trial court=s award of
attorney=s fees to the tenants?








In their second issue, the Charettes contend that the
evidence is legally and factually insufficient to support the trial court=s award of
attorney=s fees to the
Fitzgeralds under section 92.0081(h) of the Texas Property Code.  See Tex. Prop. Code Ann. '92.0081(h) (Vernon
Supp. 2006).  Section 92.0081(h) provides that, if a landlord violates section 92.0081, the
tenant Amay . . . recover from the landlord .
. . reasonable attorney=s fees.@  Therefore, this statute affords the trial court a measure
of discretion in deciding whether to award attorney=s fees.  See Bocquet v. Herring,
972 S.W.2d 19, 20 (Tex. 1998).  Accordingly, we review the trial court=s ruling on a request for expenses
under this statute for an abuse of discretion.  Id. at 20B21.  Generally, the test for abuse of
discretion is whether the trial court acted without reference to any guiding
rules and principles or whether the trial court acted arbitrarily and
unreasonably.  See McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex.
1995).  However, under section 92.0081(h), the trial court=s discretion is limited by the
requirement that the attorney=s fees be reasonable.  See Tex.
Prop. Code Ann. '92.0081(h); Bocquet, 972 S.W.2d at 20B21.  Therefore, the trial court
abuses its discretion if it awards expenses under this statute without legally
and factually sufficient evidence that the attorney=s fees awarded were reasonable.  See
Bocquet, 972 S.W.2d at 20B21; Bass v. Walker, 99 S.W.3d 877,
882B83 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).

In determining if the evidence is legally sufficient, we
must consider evidence in the light most favorable to the challenged finding
and indulge every reasonable inference that would support it.  See Bass, 99
S.W.3d at 821.  We must credit favorable evidence if a reasonable factfinder
could and disregard contrary evidence unless a reasonable factfinder could
not.  See id. at 827.  We must determine whether the evidence at trial
would enable reasonable and fair-minded people to find the facts at issue.  See
id.  The factfinder is the sole judge of the credibility of the witnesses
and the weight to give their testimony.  See id. at 819.  This court
must sustain a no-evidence challenge if the record shows one of the following:
(1) a complete absence of a vital fact, (2) rules of law or evidence bar the
court from giving weight to the only evidence offered to prove a vital fact,
(3) the evidence offered to prove a vital fact is no more than a scintilla, or
(4) the evidence establishes conclusively the opposite of the vital fact.  See
id. at 810.

When reviewing a challenge to the factual sufficiency of
the evidence, we examine the entire record, considering both the evidence in
favor of, and contrary to, the challenged finding.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  After considering all the evidence, we set aside
the fact finding only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole judge of the credibility
of the witnesses and the weight to be given to their testimony.  GTE
Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  We may not substitute our own judgment for that of
the trier of fact, even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616. 








After reviewing the record, we find no evidence that the
Fitzgeralds= attorney=s fees were
reasonable.  The Fitzgeralds do not assert there is any such evidence in the
record; however, they argue that this court should uphold the attorney=s fees award for
two reasons: (1) the record reflects that the parties Aimplicitly
stipulated@ to the reasonableness of the attorney=s fees; and (2)
the attorney=s fees award is proper because the trial court can
take judicial notice of the Ausual and customary attorney=s fees. . .without
further evidence.@  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.004 (Vernon
Supp. 2005). 

An Aimplicit stipulation@ is an oxymoron. 
Stipulations are express, not implied.   The record reflects no stipulation or
agreement made by the parties as to the reasonableness of the attorney=s fees.  The only
reference to attorney=s fees in the entire trial is contained in
the following excerpt: 

[Trial Court]:           Okay. Are
y=all going to cross-examine each
other on attorney=s fees or have you discussed it?

[Charettes= counsel]:        I don=t think so.

[Trial Court]:           Okay. So
maybe we can do that by affidavit, if y=all don=t object? 

[Charettes= counsel]:        Be glad to.

[Trial Court]:           If you are
not going to cross each other, you canB

[Charettes= counsel]:        State what they
are.

[Trial Court]:           Okay.
Stand up and tell me what they are. 

[Fitzgeralds= counsel]:       Okay.

[Trial Court]:           If we do
it that way, tell me what your fee request is.

. . .     

[Fitzgeralds= counsel]:       Your Honor, my fee
request for fees and expenses incurred in this matter, which includes numerous
deposition notices, certificates of non-appearance, appearing at the eviction
hearing, a TRO and injunction is $25,422.90.

[Trial Court]:           Okay.
Anything else in your request?








[Fitzgeralds= counsel]:       Also, for attorney=s fees on appeal, that would be
through trial, attorney=s fees on appeal would be $7,500.
For appeal to the Court of Appeals, 5,000, and for application for writ of
error to the Supreme Court, 5,000, if the writ  of error is granted. 

And, I guess I do have a have couple other exhibits which have been
admitted already, but which have not been discussed, and those being Plaintiff=s Exhibits 15, 16, and 17, which
are my demands to Robbie Charette for a key, and notice to her of the bond
which was posted, and demand for return of the property after bond was posted. 

[Trial Court]:           Okay. 
Just make sure Ms. Leediker has those.

[Fitzgeralds= counsel]:       I believe the
court reporter does have them.

[Charettes= counsel]:        Yes.

[Trial Court]:           Anything
else?

[Fitzgeralds= counsel]:       No, Your Honor. 
Plaintiff rests.

[Trial Court]:           Okay. And
do you have time to do a witness?

[Charettes= counsel]:        I can at least do
my attorney=s fees, if that=s okay.

[Trial Court]:           Sure.

. . .

[Charettes= counsel]:        The request of
attorney=s fees for Defendant is
$11,715.27.  That includes both fees as well as deposition transcript costs and
other expenses. 

[Trial Court]:           Okay.

[Charettes= counsel]:        With regards to
attorney=s fees to the Court of Appeals
and/or to the Supreme Court, I would ask those fees be the same as requested by
Plaintiff.

[Trial Court]:           Okay.
All right . . .








The Fitzgeralds contend that the foregoing exchange
demonstrates that there was a stipulation of sorts between the trial court and
both parties= counsel that the attorney=s fees requested
were reasonable because the Charettes did not object to the Fitzgeralds= request for
attorney=s fees.  The
Charettes did not implicitly agree that the Fitzgeralds= claimed attorney=s fees were
reasonable.  Because the parties did not make a stipulation on the record as to
the reasonableness of the attorney=s fees, the
reasonableness of the fees must be supported by record evidence, which brings
us to the Fitzgeralds= next argument for upholding their award
of attorney=s fees. 

The Fitzgeralds contend that no such evidence was necessary
because, under sections 38.003 and 38.004 of the Texas Civil Practices and
Remedies Code, the trial court took judicial notice of the usual and customary
attorney=s fees in this
case.[4]  
Under section 38.004, a trial court, without receiving evidence, can take
judicial notice of (1) the usual and customary attorney=s fees, and (2)
the content of the file.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 38.004 (Vernon
Supp. 2005).  Under section 38.003, the usual and customary fees are presumed
reasonable.  See id. ' 38.003. However, for section 38.003 to
apply, the claim must be a claim asserted under section 38.001.  See id. ' 38.003.  Section
38.001 sets forth the following claims for which a party may recover reasonable
attorney=s fees: (1)
rendered services; (2) performed labor; (3) furnished material; (4) freight or
express overcharges; (5) lost or damaged freight or express; (6) killed or
injured stock; (7) a sworn account; or (8) an oral or written contract.  Tex. Civ. Prac. & Rem.Code Ann. ' 38.001 (Vernon
1997).  This provision has no application in this case because the trial court
awarded no relief on any of the foregoing grounds.








Section 38.004 does not allow courts to take judicial
notice of reasonableness; rather, it allows a court to take judicial notice of Athe usual and
customary attorney=s fee@ in a bench
trial.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 38.004.  Because section 38.003 is
limited to claims described in section 38.001,and because section 38.004 does
not speak to judicial notice of reasonableness, this court has held that trial
courts may not use section 38.004 to take judicial notice of the reasonableness
of attorney=s fees awarded under a statute other than section
38.001.  London v. London, 94 S.W.3d 139, 147B49 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  Though there is currently a split on this issue among
the courts of appeals, this court, of course, follows its own precedent.  Compare
London, 94 S.W.3d at 147B48  (rejecting argument that trial court
could take judicial notice of reasonable attorney=s fees recovered
outside of section 38.001), In re T.L.K., 90 S.W.3d 833, 841 (Tex. App.CSan Antonio 2002,
no pet.) (same), Valdez v. Valdez, 930 S.W.2d 725, 732B33 (Tex. App.CHouston [1st
Dist.] 1996, no writ) (same), Hasty, Inc. v. Inwood Buckhorn Jt.V., 908
S.W.2d 494, 503 (Tex. App.CDallas 1995, writ denied) (same), Richards
v. Mena, 907 S.W.2d 566, 573B74 (Tex. App.CCorpus Christi
1995, writ dism=d) (same), with Matelski v. Matelski, 840
S.W.2d 124 (Tex. App.CFort Worth 1992, no writ) (holding that,
under section 38.004, trial courts can take judicial notice of the amount of
reasonable attorney=s fees, even when fees are recovered under
the Family Code), and In re Estate of Kidd, 812 S.W.2d 356, 359 (Tex.
App.CAmarillo 1991,
writ denied) (applying sections 38.003 and 38.004 in a will-contest case).








In their original petition, the Fitzgeralds state that they
were entitled to attorney=s fees under paragraph 31 of the Lease,
Chapter 36 of the Texas Civil Practice and Remedies Code, and sections 92.0081
and 92.109 of the Texas Property Code.  In its findings and conclusions, the
trial court found that the Fitzgeralds were entitled to their reasonable
attorney=s fees under
section 92.0081 of the Texas Property Code.  See  Tex. Prop. Code, ' 92.0081(h)(Vernon
Supp. 2000).  The trial court made no such finding under Chapter 38. Because
the Fitzgeralds did not seek or obtain attorney=s fees under
section 38.001, they cannot rely on sections 39.003 and 38.004 to bridge the
gap left by the lack of evidence of the reasonableness of their attorney=s fees.  See
London, 94 S.W.3d at 147B48.  Likewise, because the record contains
no stipulation of the parties and because there is no evidence in the record as
to the reasonableness of the Fitzgeralds= attorney=s fees, we
conclude that the trial court abused its discretion in awarding attorney=s fees to the
Fitzgeralds under section 92.0081(h) of the Texas Property Code.  Accordingly,
we sustain the Charettes= second issue.

IV. Conclusion

This Fitzgeralds= cross-appeal was
untimely filed and is dismissed for lack of jurisdiction.  The Charettes= challenge to the
trial court=s finding that they violated section 92.0081(b) of the
Texas Property Code is without merit, and is overruled.  However, the Charettes= second issue
challenging the trial court=s award of attorney=s fees to the
Fitzgeralds is sustained, and the judgment is modified to vacate the $25,422.90
attorney=s fees award to
the Fitzgeralds.  The judgment is affirmed as modified. 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Judgment
rendered and Opinion filed December 21, 2006.

Panel
consists of Justices Fowler, Edelman, and Frost.

 

 









[1]  This suit was ultimately dismissed as moot.





[2]  Paragraph 24 of the Lease states as follows: 

 

If a tenant abandons the Property, Tenant will be in
default.  AAbandonment@
means Tenant fails to comply with an provisions of the Lease and occupy the
Property for five (5) consecutive days. However, at any point during the term
of this Lease, if Tenant has moved substantially all possessions from the
property or does not have a bed to sleep in, the property will be deemed Aabandoned@
and Landlord has the right to enter immediately to protect the property without
notice and without waiting for the five (5) day period to lapse... If Tenant
abandons the property, Tenant will be responsible for all costs, including but
not limited to reletting charges, utility fees, and locksmith service. 

 

Although we do not reach the issue asserted in the
Fitzgeralds= attempted cross-appeal regarding interpretation of
this Lease provision, we note the trial court=s finding that when the Fitzgeralds moved substantially all of their
possessions and ceased to sleep at the Rental Property on June 23, 2004, they Aabandoned@
the Rental Property.  





[3]  The Charettes claim that it was not necessary for
them to remove the Fitzgeralds= personal
property from the premises in order to lawfully prevent them from entering the
Rental Property because the parties entered into a bailment agreement for
storage of the Fitzgeralds= property. 
There is absolutely no evidentiary support for this argument in the record. 
And even if the parties had entered into some such agreement, the elements of a
legally cognizable bailment were not established in this case.  Moreover, such
an agreement would not expand or change the plain meaning of the terms set
forth in section 92.0081(b) of the Texas Property Code.  





[4]  This is the only basis on which the Fitgeralds
contend that the trial court could take judicial notice of the reasonableness
of their attorney=s fees.