ACCEPTED
03-16-00353-CV
12517627
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/2/2016 1:31:33 PM
JEFFREY D. KYLE
CLERK

NO. 03-16-00353-CV

**IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTCT OF TEXAS
at AUSTIN**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/2/2016 1:31:33 PM
JEFFREY D. KYLE
Clerk

**STEVE VEIGEL,**
        Appellant/Defendant

*v.*

**TEXAS BOLL WEEVIL ERADICATION FOUNDATION, INC.**
        Appellee/Plaintiff

*Appealed from the County Court at Law No. 1
of Travis County, Texas*

**APPELLANT'S BRIEF**

APPELLANT

STEVE VEIGEL, *PRO SE*

105 Quince Street
Hereford, Texas  79045
(806) 231-1008
SVeig@aol.com

**IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTICT OF TEXAS
at AUSTIN**

---

STEVE VEIGEL,
 Appellant/Defendant

*v.*

TEXAS BOLL WEEVIL ERADICATION FOUNDATION, INC.
 Appellee/Plaintiff

*Appeal from Orders and Summary Judgment of the Hon. Eric M. Sheppard
County Court at Law No. 1 for Travis County, Texas*

**IDENTITY OF PARTIES AND COUNSEL**

APPELLANT:

Steve Veigel, *pro se*
105 Quince Street
Hereford, Texas  79045
Tel. (806) 231-1009
e-mail SVeig@aol.com

APPELLEE:

Texas Boll Weevil Eradication Foundation, Inc.

APPELLEE'S COUNSEL:

| | | |
|---|---|---|
| Mr. Matt Dow | e-mail: MDow@JW.com | S.B.N. 06066500 |
| Mr. Andrew J. McKeon | e-mail: AMcKeon@JW.com | S.B.N. 24092810 |

Jackson Walker L.L.P
100 Congress
Suite 1100
Austin, Texas 78701
Tel. (512) 236-2000

# TABLE OF CONTENTS

                                                                                    Page

COVER PAGE ................................................................................1

IDENTITY OF PARTIES AND COUNSEL ........................................... 2

TABLE OF CONTENTS ................................................................ 3

STATEMENT OF THE CASE .......................................................... 7

    NATURE OF THE CASE:................................................................ 7

    COURSE OF PROCEEDINGS: ........................................................ 7

    TRIAL COURT'S DISPOSITION OF THE CASE:................................. 8

STATEMENT REGARDING ORAL ARGUMENT ................................. 9

ISSUES PRESENTED.................................................................... 9

STATEMENT OF FACTS...............................................................10

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT...............................................................................18

    ISSUE 1:    APPELLEE IS NOT A POLITICAL SUBDIVISION EXEMPT
              FROM APPLICABLE LIMITATIONS THAT BAR ITS CLAIMS .........18

    ISSUE 2:    APPELLEE'S CLAIMS ARE BARRED BY LACHES AND ARE
              OTHERWISE PRECLUDED BY *RES JUDICATA* AND/OR
              COLLATERAL ESTOPPEL.......................................................24

    ISSUE 3:    QUESTIONS OF CONTESTED MATERIAL FACTS PRECLUDE
              SUMMARY JUDGMENT FOR APPELLEE ....................................26

CONCLUSION AND PRAYER FOR RELIEF .......................................27

CERTIFICATE OF COMPLIANCE.....................................................28

_____ ...............................................28

Steve Veigel, *pro se* ................................................................28

CERTIFICATE OF SERVICE............................................................28

APPENDIX.................................................................................29

    ORDER DENYING DEFENDANT STEVE VEIGEL'S MOTION FOR
              SUMMARY JUDGMENT.........................................................29

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT .........30

TEX. AGRIC. CODE § 74.101.................................................................................31

TEX. AGRIC. CODE § 74.1011...............................................................................33

TEX. AGRIC. CODE § 74.1021...............................................................................34

TEX. AGRIC. CODE § 74.1041...............................................................................36

TEX. AGRIC. CODE § 74.1042...............................................................................38

TEX. AGRIC. CODE § 74.107.................................................................................39

TEX. AGRIC. CODE § 74.109.................................................................................41

TEX. AGRIC. CODE § 74.120.................................................................................43

TEX. AGRIC. CODE § 74.129.................................................................................45

TEX. CIV. PRAC. & REM. CODE § 16.004.............................................................46

TEX. CIV. PRAC. & REM. CODE § 16.051.............................................................47

TEX. CIV. PRAC. & REM. CODE § 16.061.............................................................48

TEX. CONST. ART. III, § 52.................................................................................49

TEX. CONST. ART. VIII, § 1................................................................................51

TEX. CONST. ART. XVI, § 59..............................................................................54

TEX. CONST. ART. XVI, § 68..............................................................................57

# INDEX OF AUTHORITIES

**Cases**

*El Paso Cnty. Juvenile Bd. v. Aguilar*, 387 S.W.3d 795 (Tex. App. –
El Paso 2012, no pet.) ...................................................................23

*Gonzales v. TBWEF*, No. 03-02-00740-CV, 2003 WL 1882508 (Tex.
Civ. App. – Austin April 17, 2003, no pet.) ..........................................23

*Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d. 529 (Tex.
1980) ...........................................................................................23

*In re T.L.K.,* 90 S.W.3d 833 (Tex.App.-San Antonio 2002, no pet.)............18

*Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621 (Tex. App. –
Dallas 2001, pet. denied)..................................................................23

*Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952
S.W.2d 454 (Tex. 1997)...............................................................18, 23

**Statutes**

TEX. AGRIC. CODE § 74.101 ................................................ 19, 20, 21, 23

TEX. AGRIC. CODE § 74.1011 .........................................................20, 21, 23

TEX. AGRIC. CODE § 74.1021 .............................................................21, 23

TEX. AGRIC. CODE § 74.1041 ..................................................................23

TEX. AGRIC. CODE § 74.1042 .............................................................21, 23

TEX. AGRIC. CODE § 74.107 ....................................................................23

TEX. AGRIC. CODE § 74.109 .............................................................21, 22

TEX. AGRIC. CODE § 74.120 ....................................................................23

TEX. AGRIC. CODE § 74.129 .............................................................22, 23

TEX. AGRIC. CODE T. 5, SUBT. B, CH. 74, SUBCH. D (TEX. AGRIC.
CODE §§ 74.101 – 74.131) ....................................................................20

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3)............................................15

TEX. CIV. PRAC. & REM. CODE § 16.051 ...................................................15

TEX. CIV. PRAC. & REM. CODE § 16.061 .................................................passim

TEX. CIV. PRAC. & REM. CODE Chapter 101 ...............................................24

TEX. CIV. PRAC. & REM. CODE Chapter 104 ...............................................24

Tex. Tax Code § 171.255.....................................................................passim

**Constitutional Provisions**
TEX. CONST. ART. III, § 52........................................................................19, 20

TEX. CONST. ART. VIII, § 1(C)......................................................................23

TEX. CONST. ART. XVI, § 59.....................................................................19, 20

TEX. CONST. ART. XVI, § 68.....................................................................18, 20

**Other Authorities**
https://www.txbollweevil.org/zones.html...................................................21

## STATEMENT OF THE CASE

**NATURE OF THE CASE:**

On August 3, 2010, APPELLEE sued Bob Veigel and Steve Veigel personally [1 CR at 5-59] pursuant to TEX. TAX CODE § 171.255 seeking to collect APPELLEE'S prior default judgments entered on August 10, 2000 and September 29, 2004 against Veigel Farms, Inc. then totaling $26,158.22, or alternatively, personally for $14,726.06 then in total resulting from alleged unpaid assessments and fees all related to Veigel Farms, Inc.'s 1999 and 2001 cotton crops respectively plus attorney fees, interest, and costs. [1 CR at 8-10.]

APPELLANT filed verified special exceptions and subject thereto APPELLANT'S answer, motion to dismiss, and/or summary judgment asserting several defenses including that APPELLEE'S claim was barred by limitations on its face. [1 CR at 63-71.]

**COURSE OF PROCEEDINGS:**

APPELLEE never obtained service of process of Bob Veigel and Bob Veigel never made an appearance in the Case. [1 CR at 72, 77, 82-83, 224-228.] As such, APPELLEE did not seek or obtain judgment against Bob Veigel [1 CR at 220]. Bob Veigel is not a party to this appeal.

After granting [1 CR at 85] APPELLEE'S motion to reconsider [1 CR at 76-79] APPELLEE'S verified motion to retain [1 CR at 72-74], APPELLEE filed a response [1 CR at 86-95] to APPELLANT'S motion for summary judgment asserting for the first time that APPELLEE was a political subdivision exempt from all limitations pursuant to TEX. CIV. PRAC. & REM. CODE § 16.061 and also moved for summary judgment on February 26, 2016 [1 CR at 96-162].

**TRIAL COURT'S DISPOSITION OF THE CASE:**

After an off the record hearing on March 30, 2016, the Trial Court denied APPELLANT'S motion for summary judgment [1 CR at 219] and granted APPELLEE'S motion for tradition and no evidence summary judgment awarding APPELLEE judgment against APPELLANT for $32,179.16 represented to be the present amount that Veigel Farms, Inc. owed APPELLEE on the two prior judgments plus 5% interest and costs. [1 CR at 220.]

The Trial Court did not rule on APPELLEE'S request for attorney fees [1 CR at 104, 108, 161-162] or APPELLEE'S objections [1 CR at 227] filed on March 30, 2016 to Steve Veigel's affidavit [1 CR at 175-179, 203-207]. APPELLANT timely filed his notice of appeal on May 23, 2016. [1 CR at 221]

## STATEMENT REGARDING ORAL ARGUMENT

APPELLANT is not requesting oral argument at this time because oral argument is not likely to significantly aid the Court in its decision as the record and APPELLANT'S BRIEF and anticipated APPELLANT'S REPLY BRIEF should adequately present the facts and legal augments.

## ISSUES PRESENTED

**ISSUE 1:** **APPELLEE IS NOT A POLITICAL SUBDIVISION EXEMPT FROM APPLICABLE LIMITATIONS THAT BAR ITS CLAIMS**

APPELLANT was entitled to summary judgment on limitations because APPELLEE is not a political subdivision exempt from limitations under TEX. CIV. PRAC. & REM. CODE § 16.061 otherwise applicable to bar APPELLEE'S claims and summary judgment.

**ISSUE 2:** **APPELLEE'S CLAIMS ARE BARRED BY LACHES AND ARE OTHERWISE PRECLUDED BY *RES JUDICATA* AND/OR COLLATERAL ESTOPPEL**

APPELLANT was also entitled to summary judgment on his affirmative defenses including laches, *res judicata*, and/or collateral estoppel.

**ISSUE 3:** **QUESTIONS OF CONTESTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT FOR APPELLEE**

## STATEMENT OF FACTS

1.    Veigel Farms, Inc. was formed in 1985 by Bob and Steve Veigel who each own 50% of the company's stock and serve as directors, as president and secretary respectively, and as co-managers. [1 CR at 159 (p. 40; l. 1-6)175.]   From November 1994 until March 5, 2003 when it ceased and liquidated all farming operations, Veigel Farms, Inc. leased and operated U.S.D.A Farm Service Agency ["FSA"] farm serial number ["FSN"] 1872. [1 CR at 159 (p. 41; l. 10-13), 175.]

2.    However as reflected in public records that APPELLEE had online access providing constructive knowledge, Veigel Farms, Inc.'s corporate privileges were forfeited and suspended from August 27, 1996 – September 26, 2002; October 15, 2003 - January 31, 2006; October 11, 2006 – April 3, 2007; and January 30, 2009 – March 23, 2009 for failure to timely file franchise and public information reports ["SUSPENDED PERIODS"]. [1 CR at 138-139.]

3.    During the SUSPENDED PERIOD of August 27, 1996 – September 26, 2002 which APPELLEE had at least constructive knowledge, Veigel Farms, Inc. grew cotton on FSN 1872 in 1999 and 2001 which APPELLEE only assessed Veigel Farms, Inc. (and not Bob or Steve Veigel pursuant to Tex.

Tax Code § 171.255) for $5,668.00 due on September 21, 1999 and for $8,596.26 due on September 14, 2001 respectively. [1 CR at 115, 117.]

4.      Veigel Farms, Inc. sold its harvested 1999 cotton crop to Plains Cotton Cooperative Association ["PCCA"] for a total of $8,978.65 paid by four PCCA dated March 2, 2002 payable to "*Veigel Farms & TDA & AAC*" [1 CR at 215-216] where "TDA" represented the Texas Department of Agriculture on behalf of APPELLEE and "AAC" represented Ag Acceptance Corporation which held an lien inferior to APPELLEE'S statutory lien. [1 CR at 204-205, 209.]

5.      APPELLANT endorsed the checks for Veigel Farms, Inc. and sent them to Melodie Taylor with AAC on March 13, 2000 [1 CR at 215] with faxed instructions on March 28, 2000 [1 CR at 215] to negotiate TDA or APPELLEE'S endorsement of the checks and pay the $6,127.60 owing on 1999 assessment [1 CR at 213] to APPELLEE. [1 CR at 204-205.]

6.      Veigel Farms, Inc. similarly sold its harvested 2001 cotton crop to PCCA which would have made payment by check(s) jointly payable to Veigel Farms, Inc. and TDA or APPELLEE for an amount in excess of the 2001 assessment.  As customary, APPELLEE would have had to receive such checks from Veigel Farms, Inc. for APPELLEE'S endorsement, collection, and satisfaction of the 2001 assessment; however such documentation also has

been lost, misplaced, and/or destroyed over the passage of time. [1 CR at 203-206.]

7. During the SUSPENDED PERIOD of August 27, 1996 – September 26, 2002 which APPELLEE had at least constructive knowledge, APPELLEE filed suit to collect the 1999 assessment only against Veigel Farms, Inc. (and not Bob or Steve Veigel pursuant to Tex. Tax Code § 171.255) on May 8, 2000 and obtained a default judgment totaling $6,861.12 plus 10% post-judgment interest and costs from August 10, 2000 ["JUDGMENT ON 1999 ASSESSMENT"]. [1 CR at 131-132.]

8. During the SUSPENDED PERIOD of October 15, 2003 - January 31, 2006 which APPELLEE had at least constructive knowledge, APPELLEE filed suit to collect the 2001 assessment only against Veigel Farms, Inc. (and not Bob or Steve Veigel pursuant to Tex. Tax Code § 171.255) on January 29, 2004 and obtained a default judgment totaling $9,098.26 plus 5% post-judgment interest and costs from September 29, 2004 ["JUDGMENT ON 2001 ASSESSMENT"]. [1 CR at 134-135.]

9. Almost 11 years (3,969 days) after the 1999 assessment was due and almost 9 years (3,245 days) after the 2001 assessment was due, APPELLEE filed this suit against Bob "Viegel" (sic) and Steve Veigel personally on August 3, 2010 relying on TEX. TAX CODE § 171.255 seeking to establish

personal liability on the current amount claimed due on the prior judgments against Veigel Farms Inc., or alternatively, the current amount claimed due on the unpaid 1999 and 2001 assessments plus interest, attorney fees, and costs. [1 CR at 5-11.]

10.    APPELLEE caused citation to be issued to APPELLANT on August 5, 2010 who was served on August 7, 2010. [1 CR at 61]. APPELLANT timely filed his verified special exceptions and subject thereto, his original answer and motion to dismiss and/or motion for summary judgment ["APPELLANT'S MFSJ"] on August 30, 2010. [1 CR at 63 – 71.]

11.    There was no activity in the Case [1 CR at 2-3, 224] after APPELLANT'S MFSJ was filed for over 5 years (1,913 days) until APPELLEE filed its verified motion to retain ["MOTION TO RETAIN"] the Case on the Docket on November 25, 2015. [1 CR at 72-74]. The MOTION TO RETAIN merely stated "[s]*ervice has been attempted on Bob Veigel without success.*" [1 CR at 72.] The MOTION TO RETAIN was denied by Judge Todd T. Wong on December 7, 2015. [1 CR at 75.] The Case was dismissed on December 15, 2015. [1 CR at 80.]

12.    APPELLEE filed a motion to reconsider ["MOTION TO RECONSIDER"] the denial of the MOTION TO RETAIN on December 15, 2015 which again merely stated without further explanation or justification of the delay that

"[s]*ervice has been attempted on Bob Veigel without success*" and "[i]*n fact, Plaintiff is still attempting to effect proper service on Defendant Bob Veigel. Given the early stages of this case, ... Plaintiff requests that the Court reconsider its Order Denying the Plaintiff's Motion to Retain.*" [1 CR at 77-78.] However, APPELLEE appears to have lost the original citation to Bob Veigel prior to attempted service and did not seek to have it reissued until January 5, 2016 which also was not served or returned. [1 CR at 82-83, 224-228.]

13.    The MOTION TO RECONSIDER was granted by Judge Eric M. Sheppard reinstating the Case on January 6, 2016. [1 CR at 81, 83-84.] Thereafter on February 26, 2016, APPELLEE filed a response [1 CR at 86-95] to APPELLANT'S MFSJ asserting for the first time that APPELLEE was a political subdivision exempt from all limitations pursuant to TEX. CIV. PRAC. & REM. CODE § 16.061 and filed APPELLEE'S motion for traditional and no evidence summary judgment ["APPELLEE'S MFSJ"] [1 CR at 96-162]. APPELLANT filed his reply [1 CR at 163-190] to APPELLANT'S MFSJ on March 23, 2016 and his response [1 CR at 191-218] to APPELLEE'S MFSJ on March 28, 2016.

14.    After an off the record hearing was held on APPELLANT'S MFSJ and APPELLEE'S MFSJ on March 30, 2016, presiding Trial Court Judge Eric M. Sheppard denied APPELLANT'S MFSJ [1 CR at 219] and granted APPELLEE'S

MᴲSJ on April 26, 2016 awarding Aᴘᴘᴇʟʟᴇᴇ judgment against Aᴘᴘᴇʟʟᴀɴᴛ for $32,179.16 represented to be the present amount that Veigel Farms, Inc. owed Aᴘᴘᴇʟʟᴇᴇ on the Jᴜᴅɢᴍᴇɴᴛ ᴏɴ 1999 Assᴇssᴍᴇɴᴛ and Jᴜᴅɢᴍᴇɴᴛ ᴏɴ 2001 Assᴇssᴍᴇɴᴛ plus 5% interest and costs. [1 CR at 220.]

15.    The Trial Court did not rule on Aᴘᴘᴇʟʟᴇᴇ's request for attorney fees [1 CR at 104, 108, 161-162] or Aᴘᴘᴇʟʟᴇᴇ's objections [1 CR at 227] filed on March 30, 2016 to Steve Veigel's affidavit [1 CR at 175-179, 203-207].

16.    Aᴘᴘᴇʟʟᴀɴᴛ timely filed his notice of appeal on May 23, 2016. [1 CR at 221.]

## Sᴜᴍᴍᴀʀʏ ᴏғ ᴛʜᴇ Aʀɢᴜᴍᴇɴᴛ

17.    Aᴘᴘᴇʟʟᴀɴᴛ's first issue is that the Trial Court erred as a matter of law in reinstating the Case to the Docket after dismissing the Case for want of prosecution and subsequently denying Aᴘᴘᴇʟʟᴀɴᴛ's MᴲSJ and granting Aᴘᴘᴇʟʟᴇᴇ's MᴲSJ. Aᴘᴘᴇʟʟᴇᴇ concedes that its claims would be barred by the applicable four year limitations pursuant to Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ §§ 16.004(a)(3) or 16.051 if it was not a political subdivision exempt from such limitations pursuant to Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 16.061. Although Aᴘᴘᴇʟʟᴇᴇ is a qusi-government corporation, it is not a state agency or political subdivision as defined by Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ

§ 16.061 and does not otherwise even meet established elements required of political subdivisions.

18.    APPELLANT'S second issue is that the Trial Court erred denying APPELLANT'S MFSJ and granting APPELLEE'S MFSJ as a matter of law with respect to APPELLANT'S defenses of laches, *res judicata*, and/or collateral estoppel.  Even if APPELLEE is not subject to limitations, it is still subject to laches.  During the approximate 15 years period of time since the 1999 and 2001 assessments were made and the subsequent five year delay in moving to prosecute APPELLEE'S claims, evidentiary documents supportive of APPELLANT'S defenses have been lost, misplaced, or destroyed and witnesses with personal knowledge are unknown and unavailable and even the memory and recollection of the APPELLANT has faded over such time.

19.    APPELLEE'S reliance on Tex. Tax Code § 171.255 serves as a two way street that also supports Appellant's defenses of *res judicata* and/or collateral estoppel.  APPELLEE had at least constructive knowledge at the time of the 1999 and 2001 assessments as well as at the times that the suits and judgments were obtained against Veigel Farms, Inc. in the JUDGMENT ON 1999 ASSESSMENT and the JUDGMENT ON 2011 ASSESSMENT, that Veigel Farms, Inc. had lost its corporate privileges to conduct business and to sue or be sued in Texas.  Pursuant to Tex. Tax Code § 171.255, should have

assessed and sued Bob and Steve Veigel individually instead of Veigel Farms, Inc. and APPELLEE is now precluded from recovery in this Cases under the doctrines of *res judicata* and/or collateral estoppel.

20. APPELLANT'S third issue is that the Trial Court erred in granting Appellee's MfSJ which is precluded by summary judgment evidence that raised numerous genuine issues of contested material facts.

21. For example, APPELLANT'S summary judgment evidence conclusively proved that at least on PCCA's checks for the 1999 harvested crop in amounts in excess of the 1999 assessment were paid jointly to Veigel Farms, Inc, APPELLEE, and AAC. APPELLANT averred that he endorsed the 1999 PCCA on Veigel Farms, Inc.'s behalf and sent them to AAC with instructions for AAC to obtain APPELLEE'S endorsement necessary to collect the checks and pay the 1999 assessment to APPELLEE in full and release APPELLEE'S superior statutory lien. Although, APPELLEE objected to Steve Veigel's summary judgment affidavit, the Trial Court did not grant such objection and APPELLEE did not present any summary judgment that the checks were not presented to APPELLEE for its endorsement and payment of the 1999 assessment or agreement thereof with AAC or that the checks were otherwise cashed by AAC with APPELLEE'S unauthorized or forged endorsement.

## ARGUMENT

**ISSUE 1: APPELLEE IS NOT A POLITICAL SUBDIVISION EXEMPT FROM APPLICABLE LIMITATIONS THAT BAR ITS CLAIMS**

APPELLANT was entitled to summary judgment on limitations because APPELLEE is not a political subdivision exempt from limitations under TEX. CIV. PRAC. & REM. CODE § 16.061 otherwise applicable to bar APPELLEE'S claims and summary judgment.

22.    APPELLANT'S MFSJ [1 CR 66-71] sought summary judgment based on four year limitations expiring at least by September 28, 2008 which, was four years after the JUDGMENT ON 2001 ASSESSMENT was entered, almost six years before APPELLEE filed this suit on August 3, 2010. APPELLANT'S MFSJ argued that APPELLEE was not a state agency, but rather a private entity formed pursuant to TEX. CONST. ART. XVI, § 68 which is not entitled to the state's exemption from limitations pursuant to TEX. CIV. PRAC. & REM. CODE § 16.061 citing *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952 S.W.2d 454, 470-71 (Tex. 1997) and *In re T.L.K.,* 90 S.W.3d 833, 839-40 (Tex.App.-San Antonio 2002, no pet.)

23.    APPELLEE responded to APPELLANT'S MFSJ arguing that since the *Lewellen* decision, a new enabling statute passed in 1997 clarifying APPELLEE'S authorization and status to conform to Constitutional concerns announced in *Lewellen*, that APPELLEE was now a political subdivision

entitled to exemption from limitations, and that this Case was brought for the use and benefit of Texas citing only TEX. AGRIC. CODE § 74.101(a)(1). [1 CR at 86-90.]

24.     APPELLANT replied to APPELLEE'S response arguing that APPELLEE does not qualify as a "political subdivision" under TEX. CIV. PRAC. & REM. CODE § 16.061 because it is not an entity created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, was not authorized as a political subdivision exempt from limitations, and did not otherwise even meet the elements required of political subdivisions. [1 CR at 165-170.]

25.     APPELLEE argued that TEX. CIV. PRAC. & REM. CODE § 16.061 does not define a political subdivision, [1 CR at 87.]  Although the TEX. CIV. PRAC. & REM. CODE § 16.061 does not define a political subdivision, it does specify and limit what types of political subdivisions qualify to be exempt from limitations to include only "*a county, an incorporated city or town, a navigation district, a municipal utility district, a port authority, an entity acting under Chapter 54, Transportation Code, a school district, or an entity created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution*" which APPELLEE is not. [1 CR 168-170.]

26.     Although the 1997 enabling statute apparently removed the several references noted by the *Lewellen* court that APPELLEE was created and

authorized under the authority of Article XVI, Section 68 of the Texas Constitution such as in TEX. AGRIC. CODE § 74.101(a)(3), the Legislature did not terminate APPELLEE'S existence and create a successor under different authority.

27. Instead, TEX. AGRIC. CODE § 74.101(a)(4) expressly provided that "*an urgent public necessity exists to validate and ratify the assessments, agreements, and obligations of the Texas Boll Weevil Eradication Foundation, Inc., made or incurred by the foundation*" and TEX. AGRIC. CODE § 74.1011(a) expressly provided that "[t]*he Texas Boll Weevil Eradication Foundation, Inc., a Texas nonprofit corporation chartered by the secretary of state on September 14, 1993, shall be recognized by the department as the entity … provided by this subchapter.*"

28. The current version of TX AGRIC. CODE T. 5, SUBT. B, CH. 74, SUBCH. D (TEX. AGRIC. CODE §§ 74.101 – 74.131) does not mention that APPELLEE is a political subdivision created under the authority of Section 52, Article III, or Section 59, Article XVI, Texas Constitution (as required of other political subdivision entities by TEX. CIV. PRAC. & REM. CODE § 16.061) or any other Constitution or statutory provision.

29. Instead of providing that the APPELLEE is a political subdivision entitled to be exempt from limitations, the Legislature expressed desire to

prevent or limit APPELLEE, as a private non-profit quasi-government corporation, from being deemed a state agency given APPELLEE'S statewide jurisdiction and supervision and control by statewide elected officials (rather than the of limited jurisdiction and local governance required of political subdivisions).

30.    TEX. AGRIC. CODE § 74.101(a)(3) provides "*there is a need for a quasi-governmental entity acting under the supervision and control of the commissioner...*".

31.    TEX. AGRIC. CODE § 74.1011 provides:

(a) The Texas Boll Weevil Eradication Foundation, Inc., a Texas nonprofit corporation chartered by the secretary of state on September 14, 1993, shall be recognized by the department as the entity to plan, carry out, and operate eradication and diapause programs to eliminate the boll weevil and the pink bollworm from cotton **in the state under the supervision of the department as provided by this subchapter**. [emphasis added]

APPELLEE'S statewide jurisdiction is divided into zones as set forth by TEX. AGRIC. CODE §§ 74.1021, 74.1042 and depicted on APPELLEE'S website map at https://www.txbollweevil.org/zones.html.  [1 CR at 190, 218.]

32.    TEX. AGRIC. CODE § 74.109 provides:

(d) The foundation and the board **are state agencies for the following purposes only**:
    (1) exemption from taxation including exemption from sales

and use taxes, vehicle registration fees, and taxes under Chapter 152, Tax Code; and

(2) indemnification under Chapter 104, Civil Practice and Remedies Code.

(e) **Funds collected by the foundation are not state funds** and are not required to be deposited in the state treasury. The foundation shall deposit all money collected under this subchapter in a bank or other depository approved by the commissioner.

(f) **The foundation is a governmental unit** under Section 101.001, Civil Practice and Remedies Code, and is entitled to governmental immunity. A tort claim against the foundation must be made under Chapter 101, Civil Practice and Remedies Code. …

(h) **All revenue collected under this subchapter shall be used solely to finance programs approved by the commissioner** as consistent with this subchapter.  [emphasis added]

33.    TEX. AGRIC. CODE § 74.129 provides "[t]*he legislature recognizes that the foundation, acting under the supervision and control of the commissioner, is carrying out an important governmental function and that therefore the foundation, as a quasi-governmental entity, must be immune from lawsuits and liability except to the extent provided in Chapter 101, Civil Practice and Remedies Code, and as provided by this section.*"

34.    Provisions of TEX. AGRIC. CODE § 74.109(d) preclude APPELLEE'S qualification as a state agency exempt from limitation present to TEX. CIV. PRAC. & REM. CODE § 16.061.  APPELLEE did not argue below that it was a state agency.

35. Instead. APPELLEE argued that it meet the judicial test of the elements required of a political subdivision as set forth in *Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d. 529 (Tex. 1980); *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621 (Tex. App. – Dallas 2001, pet. denied); *El Paso Cnty. Juvenile Bd. v. Aguilar*, 387 S.W.3d 795, 796 (Tex. App. – El Paso 2012, no pet.); and *Gonzales v. TBWEF*, No. 03-02-00740-CV, 2003 WL 1882508, at *2 (Tex. Civ. App. – Austin April 17, 2003, no pet.). [1 CR at 87-90.]

36. However, APPELLEE does not satisfy any of the three elements required to be deemed a political subdivision. APPELLEE'S jurisdiction is statewide and not geographically limited. *See* TEX. AGRIC. CODE §§ 74.1011, 74.1021, 74.1042, and https://www.txbollweevil.org/zones.html. APPELLEE'S governing body to which the Commissioner of the Department of Agriculture and the Governor make certain appointments acts "*under the supervision and control of the commissioner*". *See* TEX. AGRIC. CODE §§ 74.101(a)(3) , 74.1011, 74.107, 74.1041(c) , 74.105(d). 74.120(d) , and 74.129. APPELLEE'S assessments are not taxes or fees which would be prohibited occupation taxes on agricultural pursuits, under TEX. CONST. ART. VIII, § 1(C). *See Texas Boll Weevil Eradication Foundation v. Lewellen*, 952 S.W.2d 454, 462 (Tex. 1997) and even if APPELLEE did, it would not be

the type of political subdivision specified by TEX. CIV. PRAC. & REM. CODE § 16.061. [1 CR at 166-170].

37.    Any four year statute of limitations applicable to APPELLEE'S claim ran years before APPELLEE filed suit in this Case. APPELLEE is not exempt from such limitations pursuant to TEX. CIV. PRAC. & REM. CODE § 16.061 because it is not a political subdivision and the Legislature has specified that APPELLEE is only a state agency to the extent it is exempt from taxes, indemnification under Civil Practice and Remedies Code Chapter 104, and governmental immunity under Civil Practice and Remedies Code Chapter 101.

38.    The Trial Court erred as a matter of law by granting APPELLEE'S motion to reinstate the Case on the Docket and subsequently denying APPELLANT'S MFSJ on the issue of limitations and granting APPELLEE'S MFSJ on the basis that APPELLEE was exempt from limitations as a state agency or political subdivision under TEX. CIV. PRAC. & REM. CODE § 16.061.

**ISSUE 2:    APPELLEE'S CLAIMS ARE BARRED BY LACHES AND ARE OTHERWISE PRECLUDED BY *RES JUDICATA* AND/OR COLLATERAL ESTOPPEL**

APPELLANT was also entitled to summary judgment on his affirmative defenses including laches, *res judicata*, and/or collateral estoppel.

39. APPELLANT asserted the defense of laches. [1 CR at 65, 196] APPELLEE'S MFSJ responded that APPELLANT had presented no summary judgment evidence as to any unreasonable delay and resulting injury where APPELLANT changed his position to his detriment in reliance on APPELLEE'S delay. [1 CR at 106-107]. In response to APPELLEE'S MFSJ, Appellant responded with summary judgment evidence that Appellee's unreasonable 15 year delay cause him injury because he did not take more care to preserve transactional documents and testimony necessary to provide evidence of potential defenses. [1 CR at 196-197.]

40. If APPELLEE is somehow exempt from limitations because it is a political subdivision, APPELLANT'S defense is still viable. *Houston Lighting & Power Co. v. City of Wharton* (App. 1 Dist. 2003) 101 S.W.3d 633 (Because the operation of statutes of limitations as a bar to incorporated cities' claims is statutorily precluded, laches is an appropriate remedy when a city unreasonably delays asserting its rights),

41. APPELLANT also asserted the defenses of *res judicata* and/or collateral estoppel. [1 CR at 65, 68-69,  ] APPELLEE'S response to APPELLANT'S MFSJ argued that APPELLANT lacked necessary privity with Veigel Farms Inc. to allow *res judicata* and that APPELLANT did not show that the facts in this suit were previously litigated. [1 CR at 86-87, 90-94.] APPELLANT'S reply to

APPELLANT'S MFSJ argued that pursuant to TEX. TAX CODE § 171.255 APPELLEE could and should have sued APPELLANT as a deemed partner because APPELLEE had at least constructive knowledge that Veigel Farm's Inc. corporate privileges had been suspended. [1 CR at 170-172].

42.    As a result of Veigel Farms, Inc.'s suspended corporate privileges at the time that the assessments were made and when suits and judgments were taken against Veigel Farm Inc., pursuant to TEX. TAX CODE § 171.255 Bob and Steve Veigel were deemed to be operating as partners having control and privity over Veigel Farms, Inc. as a matter of statute.

43.    The Trial Court erred as a matter of law by denying APPELLANT'S MFSJ on the issue of laches, res judicata, and/or collateral estoppel and granting APPELLEE'S MFSJ .

**ISSUE 3:    QUESTIONS OF CONTESTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT FOR APPELLEE**

44.    APPELLANT argued that there were questions of contested material fact raised by his summary judgment evidence related to his other defenses that otherwise precluded summary judgment for APPELLEE. [1 CR at 197-199.] APPELLANT respectfully request that he be allowed to further brief this issue, if necessary, in APPELLANT'S Reply Brief without any waiver of this issue, It is expected that APPELLEE may try to argue that such evidence was

objected to; however, APPELLEE did not obtain a ruling on such objection and the objection does not appear in the Clerk's Record.

## CONCLUSION AND PRAYER FOR RELIEF

For these reasons stated herein above, Appellant prays that the Court that determine that the Trial Court erred in reinstating the Case to the Docket and subsequently denying APPELLANT'S MFSJ and granting APPELLEE'S MFSJ and reverse and rendered that APPELLEE should take nothing and immediate file releases of record of its judgment in this Case and any other relief in law or equity that APPELLANT may be entitled,

Respectfully submitted,

APPELLANT:

STEVE VEIGEL, *PRO SE*

105 Quince Street
Hereford, Texas  79045
(806) 231-1008
SVeig@aol.com

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2003 using 14 point New Times Roman font and contains 3,785 words, as determined by Microsoft Word 2003 word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

_____
Steve Veigel, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August 2016, a true and correct copy of this document instrument was e-mailed to APPELLEE'S counsel as follows:

> Mr. Matt Dow at MDow@JW.com
> Mr. Andrew J. McKeon at AMcKeon@JW.com
> Jackson Walker L.L.P
> 100 Congress Avenue, Suite 1100
> Austin, Texas  78701

_____
Steve Veigel

TEXAS BOLL WEEVIL ERADICATION §   VEIGEL'S MOTION FOR SUMMARY
FOUNDATION, INC.                                    §   IN THE COUNTY COURT AT LAW

ORDER DENYING DEFENDANT STEVE
JUDGMENT

2016 APR 26  PM 4: 29
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

Plaintiff,                                                §

vs.                                                         §

                                                            §   NUMBER 1 OF

BOB VEIGEL AND STEVE VEIGEL   §   TRAVIS COUNTY, TEXAS

Defendants.                                         §

## ORDER DENYING DEFENDANT STEVE VEIGEL'S
## MOTION FOR SUMMARY JUDGMENT

On the 30th day of March 2016, came before the Court Defendant Steve Veigel's

Motion for Summary Judgment ("Motion"). The Court, having considered the Motion and the

Response and the arguments of the parties, finds that the Motion should be denied.

It is therefore ORDERED that the Motion for Summary Judgment of Defendant Steve

Veigel be and is hereby denied.

SIGNED this ___24___ day of ___April___, 2016.

JUDGE PRESIDING
ERIC M. SHEPPERD

15811145v.1

FILED FOR RECORD

2016 APR 26 PM 4: 29

COUNTY CLERK
TRAVIS CO.        TEXAS

| | | |
|---|---|---|
| TEXAS BOLL WEEVIL ERADICATION FOUNDATION, INC. | § § § § § § | IN THE COUNTY COURT AT LAW |
| VS. | § § § § § | NUMBER 1 OF |
| BOB VEIGEL AND STEVE VEIGEL | § § § § § § § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S MOTION FOR TRADITIONAL AND NO EVIDENCE SUMMARY JUDGMENT

On this day came to be heard Plaintiff Texas Boll Weevil Eradication Foundation, Inc.'s Motion for Summary Judgment. The Court, after reviewing the Motion, responses and the summary judgment evidence, is of the opinion that the Motion should be granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that all relief requested by Plaintiff Texas Boll Weevil Eradication Foundation, Inc. is granted and that Plaintiff have and recover from Steve Veigel, the sum of THIRTY TWO THOUSAND ONE HUNDRED SEVENTY-NINE AND 16/100 DOLLARS ($32,179.16), together with post-judgment interest from today at the rate of five percent (5%) per annum until paid, plus costs of court.

SIGNED this _26_ day of _April_____, 2016.

_____
JUDGE PRESIDING
ERIC M. SHEPPERD

16025090v.1

TEX. AGRIC. CODE § 74.101

Vernon's Texas Statutes and Codes Annotated
Agriculture Code (Refs & Annos)
Title 5. Production, Processing, and Sale of Horticultural Products
Subtitle B. Horticultural Diseases and Pests
Chapter 74. Cotton Diseases and Pests
Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.101

§ 74.101. Findings and Declaration of Policy

Effective: September 1, 2005

Currentness

(a) It is hereby found and declared that:

(1) the insects Anthonomus grandis Boheman, known as the boll weevil, and Pectinophora gossypiella, known as the pink bollworm, are public nuisances and a menace to the cotton industry, and their eradication is a public necessity;

(2) because of the differences in soil conditions, growing seasons, farming techniques, and climate conditions among several areas in the state where cotton is grown, the eradication and suppression of the nuisance can best be accomplished by dividing the cotton-growing areas into separate zones so that integrated pest management programs may be developed for each zone;

(3) there is a need for a quasi-governmental entity acting under the supervision and control of the commissioner whose members are actual cotton growers who would be represented on the board of the entity by directors elected by them to manage eradication and suppression programs and to furnish expertise in the field of insect control and eradication, because such an entity would enhance the interest and participation of cotton growers in the program;

(4) because of the progress made in eradication, investments made by cotton growers in certain areas, the potential injustice to certain cotton growers who have made such investments, and the stage of development of the cotton crops in the statutory eradication zones, an urgent public necessity exists to validate and ratify the assessments, agreements, and obligations of the Texas Boll Weevil Eradication Foundation, Inc., made or incurred by the foundation and related to certain statutory zones;

(5) cotton growers, in partnership with the state and federal governments, have made significant investments toward the eradication of these pests in this state;

(6) it is essential to the well-being of the cotton industry and the agricultural economy of this state that the investments of the cotton growers and the state and federal governments be protected; and

(7) the establishment of a maintenance program to be carried out by the foundation under the supervision of the department is required to protect the investments in eradication.

(b) It is the intent of the legislature that the program of eradication and suppression be carried out with the best available integrated pest management techniques.

(c) The department may recover costs for administration of this subchapter.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 8, § 1, eff. June 1, 1993. Amended by Acts 1995, 74th Leg., ch. 227, § 1, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 463, § 1.01, eff. May 30, 1997; Acts 2005, 79th Leg., ch. 119, § 1, eff. Sept. 1, 2005.

TEX. AGRIC. CODE § 74.1011

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.1011

§ 74.1011. Designation of Entity to Carry out Boll Weevil Eradication

Currentness

(a) The Texas Boll Weevil Eradication Foundation, Inc., a Texas nonprofit corporation chartered by the secretary of state on September 14, 1993, shall be recognized by the department as the entity to plan, carry out, and operate eradication and diapause programs to eliminate the boll weevil and the pink bollworm from cotton in the state under the supervision of the department as provided by this subchapter.

(b) The commissioner may terminate the foundation's designation as the entity recognized to carry out boll weevil eradication by giving 45 days' written notice to the foundation and by designating a successor entity. If the commissioner designates a successor to the foundation, the successor has all the powers and duties of the foundation under this subchapter. Any successor to the foundation shall assume and shall be responsible for all obligations and liabilities relating to any notes, security agreements, assignments, loan agreements, and any other contracts or other documents entered into by the foundation with or for the benefit of any financial institution or its predecessor, successor, or assignee.

**Credits**

Added by Acts 1997, 75th Leg., ch. 463, § 1.02, eff. May 30, 1997.

TEX. AGRIC. CODE § 74.1021

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.1021

§ 74.1021. Statutory Zones

Currentness

(a) The Northern High Plains Eradication Zone consists of Armstrong, Bailey, Briscoe, Castro, Deaf Smith, Floyd, Hale, Lamb, Parmer, Randall, and Swisher counties, and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added.

(b) The Rolling Plains Central Eradication Zone consists of Baylor, Callahan, Comanche, Eastland, Erath, Fisher, Haskell, Jones, Knox, Mitchell, Nolan, Palo Pinto, Scurry, Shackelford, Stephens, Stonewall, Throckmorton, and Young counties; all land in Archer County south of a line following Farm-to-Market Road 422 commencing at the Baylor County line running east to the intersection of Farm-to-Market Road 210, continuing east to the intersection of State Highway 25, and continuing east to the Clay County line; all land in Borden County east of a line seven miles west of the Scurry County line running south from the Garza County line to the Howard County line; and all land in Taylor County east of U.S. Highway 83 from a point commencing at the intersection of U.S. Highway 83 and the south Taylor County line, north to the town of Bradshaw; thence north of Farm-to-Market Road 1086, as the farm-to-market road proceeds west and north to the intersection of the Farm-to-Market Road 1086 and U.S. Highway 277, being all land lying north of the farm-to-market road and west of U.S. Highway 277 from the intersection of Farm-to-Market Road 1086 and U.S. Highway 277 to the point where U.S. Highway 277 intersects the south boundary line of Taylor County; all land in Brown County east of a line following State Highway 279 to Brownwood and continuing along U.S. Highway 377 south to the McCulloch County line; and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added.

(c) The St. Lawrence Eradication Zone consists of that area of Midland County south of a line 15 miles south of Interstate 20 running from the Ector County line east to the Glasscock County line; Glasscock, Reagan, and Upton counties; and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added.

(d) The South Texas Winter Garden Eradication Zone consists of Aransas, Atascosa, Austin, Bee, Bexar, Brazoria, Calhoun, Colorado, DeWitt, Dimmit, Duval, Fort Bend, Frio, Goliad, Jackson, Jim Wells, Karnes, Kinney, Kleberg, La Salle, Lavaca, Live Oak, Matagorda, McMullen, Medina, Nueces, Refugio, San Patricio, Uvalde, Victoria, Wharton, Wilson, and Zavala counties, and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added. Austin, Brazoria, Colorado, Fort Bend, Jackson, Matagorda, and Wharton counties are included in the South Texas

Winter Garden Eradication Zone only for purposes of the repayment of debt existing on April 30, 1997, and those counties may not be included in the zone for any other purpose unless the commissioner by rule proposes that an area be included in the zone and the proposal is approved by referendum in the area to be added. The commissioner may apportion any debt existing on April 30, 1997, and designate the appropriate assessment.

(e) The Southern High Plains-Caprock Eradication Zone consists of Andrews, Cochran, Crosby, Dawson, Dickens, Ector, Gaines, Garza, Hockley, Howard, Kent, Lubbock, Lynn, Martin, Motley, Terry, and Yoakum counties; all land in Borden County lying west of a line seven miles west of the Scurry County line running south from the Garza County line to the Howard County line; that area of Midland County north of a line 15 miles south of Interstate 20 running from the Ector County line east to the Glasscock County line; and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added.

(f) The Southern Rolling Plains Eradication Zone consists of Coke, Coleman, Concho, Irion, McCulloch, Runnels, Schleicher, and Tom Green counties, all land in Taylor County lying west of U.S. Highway 83 from a point commencing at the intersection of U.S. Highway 83 and the south Taylor County line, north of the town of Bradshaw; thence all the land lying south of Farm-to-Market Road 1086, as the farm-to-market road proceeds west and north to its intersection with U.S. Highway 277, being all land lying south of the farm-to-market road and east of U.S. Highway 277 from the intersection of Farm-to-Market Road 1086 and U.S. Highway 277 to the point where U.S. Highway 277 intersects the south boundary line of Taylor County, and other areas as proposed by the commissioner by rule for inclusion in the zone and approved by referendum in the area to be added.

**Credits**

Added by Acts 1997, 75th Leg., ch. 463, § 1.04, eff. May 30, 1997.

TEX. AGRIC. CODE § 74.1041

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.1041

§ 74.1041. Advisory Committees

Effective: May 18, 2001

Currentness

(a) The commissioner may appoint an advisory committee for an existing eradication zone or an area of the state that is to be considered by the commissioner for designation as or inclusion in an eradication zone. The committee shall gather advice, input, and guidance from cotton growers from the area represented by the committee concerning the interest in and concerns about the implementation of this subchapter.

(b) Each advisory committee may consider and make recommendations to the commissioner and the foundation concerning:

(1) the geographic boundaries for a proposed eradication zone;

(2) the amount of local interest in operating an eradication program;

(3) the basis and amount of an assessment necessary to support an eradication program;

(4) the need to restructure any pre-existing debt from prior eradication activities;

(5) ongoing implementation of an eradication program approved by growers in an eradication zone; and

(6) any other matter requested by the commissioner or the foundation.

(c) Each advisory committee appointed under this section shall include a sufficient number of cotton growers to ensure adequate representation across the eradication zone, including at least one cotton grower from each county in the zone and other persons as determined by the commissioner.

(d) Advisory committees appointed under this section are immune from lawsuits and liability to the same extent the foundation is immune from lawsuits and liability under Section 74.129.

(e) An advisory committee established under this section is subject to the requirements of Chapters 551 and 552, Government Code.

**Credits**

Added by Acts 1997, 75th Leg., ch. 463, § 1.05, eff. May 30, 1997. Amended by Acts 2001, 77th Leg., ch. 168, § 1, eff. May 18, 2001.

V. T. C. A., Agriculture Code § 74.1041, TX AGRIC § 74.1041
Current through the end of the 2015 Regular Session of the 84th Legislature

TEX. AGRIC. CODE § 74.1042

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.1042

§ 74.1042. Creation of Nonstatutory Eradication Zones

Currentness

(a) The commissioner may by rule designate an area of the state as a proposed eradication zone as long as the area is not within a statutory zone under Section 74.1021 that has approved an eradication program by referendum.

(b) The commissioner may hold a public hearing within the proposed eradication zone to discuss the proposed geographic boundaries of the zone. The public hearing may include any other topics allowed under this subchapter.

(c) After the adoption of a rule under Subsection (a), the commissioner shall conduct a referendum under Section 74.105.

**Credits**

Added by Acts 1997, 75th Leg., ch. 463, § 1.05, eff. May 30, 1997.

V. T. C. A., Agriculture Code § 74.1042, TX AGRIC § 74.1042
Current through the end of the 2015 Regular Session of the 84th Legislature

TEX. AGRIC. CODE § 74.107

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.107

§ 74.107. Composition of Board

Currentness

(a) The board shall be composed of members elected from each statutory eradication zone established and validated by referendum, members elected from each nonstatutory eradication zone established by referendum, members appointed by the commissioner from other cotton-growing areas of the state, and members appointed by the commissioner under Subsection (b). The commissioner shall appoint an initial board composed of 15 members. Except as provided by Subsection (b), the term of each board position may not exceed four years.

(b) In making appointments under this section, the commissioner shall appoint the following board members, selected from a variety of cotton-growing regions of the state, for four-year terms:

(1) an agricultural lender;

(2) an independent entomologist who is an integrated pest management specialist;

(3) two representatives from industries allied with cotton production; and

(4) a representative from the pest control industry.

(c) The commissioner may change the number of board positions or the eradication zone representation on the board to accommodate changes in the number of eradication zones. A change under this subsection may not contravene another provision of this subchapter.

(d) A vacancy on the board shall be filled by appointment by the commissioner for the unexpired term.

(e) On 30 days' notice and opportunity for hearing, the commissioner may replace any unelected board member of the foundation.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 8, § 1, eff. June 1, 1993. Amended by Acts 1995, 74th Leg., ch. 227, § 4, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 463, § 1.08, eff. May 30, 1997.

V. T. C. A., Agriculture Code § 74.107, TX AGRIC § 74.107
Current through the end of the 2015 Regular Session of the 84th Legislature

TEX. AGRIC. CODE § 74.109

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.109

§ 74.109. Board Duties

Currentness

(a) The board shall have an annual independent audit of the books, records of account, and minutes of proceedings maintained by the foundation prepared by an independent certified public accountant or a firm of independent certified public accountants. The audit shall include information for each zone in which an eradication program has been conducted under this subchapter. The audit shall be filed with the board, the commissioner, and the state auditor and shall be made available to the public by the foundation or the commissioner. The state auditor may examine any work papers from the independent audit or may audit the transactions of the foundation if the state auditor determines that an audit is necessary.

(b) Not later than the 45th day after the last day of the fiscal year, the board shall submit to the commissioner a report itemizing all income and expenditures and describing all activities of the foundation during the fiscal year.

(c) The foundation shall provide fidelity bonds in amounts determined by the board for employees or agents who handle funds for the foundation.

(d) The foundation and the board are state agencies for the following purposes only:

(1) exemption from taxation including exemption from sales and use taxes, vehicle registration fees, and taxes under Chapter 152, Tax Code; and

(2) indemnification under Chapter 104, Civil Practice and Remedies Code.

(e) Funds collected by the foundation are not state funds and are not required to be deposited in the state treasury. The foundation shall deposit all money collected under this subchapter in a bank or other depository approved by the commissioner.

(f) The foundation is a governmental unit under Section 101.001, Civil Practice and Remedies Code, and is entitled to governmental immunity. A tort claim against the foundation must be made under Chapter 101, Civil Practice and Remedies Code.

(g) The board shall collect data on the type and quantity of pesticides used in accordance with this subchapter. The data shall be filed with the commissioner.

(h) All revenue collected under this subchapter shall be used solely to finance programs approved by the commissioner as consistent with this subchapter.

(i) The foundation is subject to the requirements of:

  (1) the open meetings law, Chapter 551, Government Code; and

  (2) the open records law, Chapter 552, Government Code.

(j) A board member may not vote on any matter in which the member has a direct pecuniary interest. A board member is subject to the same restrictions as a local public official under Chapter 171, Local Government Code.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 8, § 1, eff. June 1, 1993. Amended by Acts 1995, 74th Leg., ch. 227, § 6, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 463, §§ 1.10, 2.03, eff. May 30, 1997.

V. T. C. A., Agriculture Code § 74.109, TX AGRIC § 74.109
Current through the end of the 2015 Regular Session of the 84th Legislature

TEX. AGRIC. CODE § 74.120

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.120

§ 74.120. Authority to Adopt Rules

Currentness

(a) The commissioner shall adopt rules to protect individuals, livestock, wildlife, and honeybee colonies on any premises in an eradication zone on which cotton plants are being grown that have been or are being treated to eradicate the boll weevil or the pink bollworm.

(b) Rules adopted under this section shall establish the criteria by which the foundation develops its procedures and methods of treatment, which shall:

(1) establish a methodology for determining when boll weevil or pink bollworm population levels have reached economic significance;

(2) establish an effective treatment regimen that seeks to provide the least possible risk to workers, the public, and the environment;

(3) minimize the effects of the use of pesticides on long-term control methods, including but not limited to the effect a particular pesticide may have on biological controls;

(4) establish methods for monitoring boll weevils, pink bollworms, and secondary pests;

(5) establish methods for verifying pesticide use reduction; and

(6) consider the acute and chronic toxicity of particular pesticides and the quantity of particular pesticides needed. Eradication zone treatment plans may take into account the potential for the use of smaller quantities of more toxic substances to result in fewer health and environmental risks than larger

quantities of less toxic substances.

(c) The commissioner may adopt other reasonable rules necessary to carry out the purposes of this subchapter and Subchapters A and B of this chapter. All rules issued under this subchapter must be adopted and published in accordance with state requirements.

(d) An advisory committee may be established to assist the commissioner in the development of rules adopted under this section. The advisory committee may be composed of:

   (1) three cotton growers from different regions of the state, appointed by the commissioner;

   (2) three entomologists with knowledge of the principles of integrated pest management, at least one of whom has special knowledge of nonchemical or biological pest control, appointed by the commissioner;

   (3) two individuals with experience representing the general interests of the environment, appointed by the chair of the Texas Natural Resource Conservation Commission;

   (4) an environmental engineer with expert knowledge of ground and surface water protection from contamination, appointed by the chair of the Texas Natural Resource Conservation Commission;

   (5) a toxicologist, appointed by the Commissioner of Health; and

   (6) an individual with experience representing the general interests of consumers and an individual with experience representing the general interests of agricultural workers, appointed by the governor.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 8, § 1, eff. June 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, § 11.02, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 227, § 15, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 463, §§ 1.20, 2.09, eff. May 30, 1997.

V. T. C. A., Agriculture Code § 74.120, TX AGRIC § 74.120
Current through the end of the 2015 Regular Session of the 84th Legislature

T<small>EX</small>. A<small>GRIC</small>. C<small>ODE</small> § 74.129

Vernon's Texas Statutes and Codes Annotated

Agriculture Code (Refs & Annos)

Title 5. Production, Processing, and Sale of Horticultural Products

Subtitle B. Horticultural Diseases and Pests

Chapter 74. Cotton Diseases and Pests

Subchapter D. Official Cotton Growers' Boll Weevil Eradication Foundation (Refs & Annos)

V.T.C.A., Agriculture Code § 74.129

§ 74.129. Exemption From Lawsuits, Liability, Taxation, and Legal Process

Currentness

The legislature recognizes that the foundation, acting under the supervision and control of the commissioner, is carrying out an important governmental function and that therefore the foundation, as a quasi-governmental entity, must be immune from lawsuits and liability except to the extent provided in Chapter 101, Civil Practice and Remedies Code, and as provided by this section. Therefore, no claims may be brought or continued against the foundation except: (1) claims allowed by Chapter 101, Civil Practice and Remedies Code; and (2) claims pending against the foundation on April 30, 1997, plus attorney's fees and costs of court. With the exception of finally adjudicated claims arising from Chapter 101, Civil Practice and Remedies Code, and claims for assessments, attorney's fees, and costs of court paid by named plaintiffs in lawsuits pending on or before April 30, 1997, all payments, contributions, funds, and assessments received or held by the foundation under this subchapter are exempt from garnishment, attachment, execution, or other seizure and from state and local taxation, levies, sales, and any other process and are unassignable. Nothing in this section shall affect or impair any existing or future indebtedness or any existing or future security interest created under a note, security agreement, assignment, or other loan agreement between the foundation and a lender or any judgment, to the extent such judgment allows recovery against the foundation pursuant to a note, security agreement, loan agreement, or other document.

**Credits**

Added by Acts 1997, 75th Leg., ch. 463, § 1.25, eff. May 30, 1997.

V. T. C. A., Agriculture Code § 74.129, TX AGRIC § 74.129
Current through the end of the 2015 Regular Session of the 84th Legislature

TEX. CIV. PRAC. & REM. CODE § 16.004
CPRC §16.004. Four-year limitations period

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

(1) specific performance of a contract for the conveyance of real property;

(2) penalty or damages on the penal clause of a bond to convey real property;

(3) debt;

(4) fraud; or

(5) breach of fiduciary duty.

(b) A person must bring suit on the bond of an executor, administrator, or guardian not later than four years after the day of the death, resignation, removal, or discharge of the executor, administrator, or guardian.

(c) A person must bring suit against his partner for a settlement of partnership accounts, and must bring an action on an open or stated account, or on a mutual and current account concerning the trade of merchandise between merchants or their agents or factors, not later than four years after the day that the cause of action accrues. For purposes of this subsection, the cause of action accrues on the day that the dealings in which the parties were interested together cease.

TEX. CIV. PRAC. & REM. CODE § 16.051
Subchapter C. Residual Limitations Period
CPRC §16.051. Residual limitations period

Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.

History of CPRC §16.051: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985.

| Vernon's Texas Statutes and Codes Annotated |
| Civil Practice and Remedies Code (Refs & Annos) |
| Title 2. Trial, Judgment, and Appeal |
| Subtitle B. Trial Matters |
| Chapter 16. Limitations |
| Subchapter D. Miscellaneous Provisions |

V.T.C.A., Civil Practice & Remedies Code § 16.061

§ 16.061. Rights Not Barred

Effective: September 1, 2001

Currentness

(a) A right of action of this state or a political subdivision of the state, including a county, an incorporated city or town, a navigation district, a municipal utility district, a port authority, an entity acting under Chapter 54, Transportation Code, a school district, or an entity created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, is not barred by any of the following sections: 16.001-16.004, 16.006, 16.007, 16.021-16.028, 16.030-16.032, 16.035-16.037, 16.051, 16.062, 16.063, 16.065-16.067, 16.070, 16.071, 31.006, or 71.021.

(b) In this section:

(1) "Navigation district" means a navigation district organized under Section 52, Article III, or Section 59, Article XVI, Texas Constitution.

(2) "Port authority" has the meaning assigned by Section 60.402, Water Code.

(3) "Municipal utility district" means a municipal utility district created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1989, 71st Leg., ch. 2, § 4.02, eff. Aug. 28, 1989; Acts 1993, 73rd Leg., ch. 782, § 1, eff. Aug. 30, 1993; Acts 1997, 75th Leg., ch. 1070, § 47, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 1420, § 8.204, eff. Sept. 1, 2001.

Sec. 52. COUNTIES, CITIES OR OTHER POLITICAL CORPORATIONS OR SUBDIVISIONS; LENDING CREDIT; GRANTS; BONDS. (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. However, this section does not prohibit the use of public funds or credit for the payment of premiums on nonassessable property and casualty, life, health, or accident insurance policies and annuity contracts issued by a mutual insurance company authorized to do business in this State.

(b) Under Legislative provision, any county, political subdivision of a county, number of adjoining counties, political subdivision of the State, or defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of two-thirds majority of the voting qualified voters of such district or territory to be affected thereby, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:

(1) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

(2) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

(3) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

(c)  Notwithstanding the provisions of Subsection (b) of this Section, bonds may be issued by any county in an amount not to exceed one-fourth of the assessed valuation of the real property in the county, for the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof, upon a vote of a majority of the voting qualified voters of the county, and without the necessity of further or amendatory legislation.  The county may levy and collect taxes to pay the interest on the bonds as it becomes due and to provide a sinking fund for redemption of the bonds.

(d)  Any defined district created under this section that is authorized to issue bonds or otherwise lend its credit for the purposes stated in Subdivisions (1) and (2) of Subsection (b) of this section may engage in fire-fighting activities and may issue bonds or otherwise lend its credit for fire-fighting purposes as provided by law and this constitution.

(e)  A county, city, town, or other political corporation or subdivision of the state may invest its funds as authorized by law.

(Amended Nov. 8, 1904; Subsecs. (a) and (b) amended and (c) added Nov. 3, 1970; Subsec. (d) added Nov. 7, 1978; Subsec. (a) amended Nov. 4, 1986; Subsec. (e) added Nov. 7, 1989; Subsecs. (a), (b), and (c) amended Nov. 2, 1999.)  (TEMPORARY TRANSITION PROVISIONS for Sec. 52: See Appendix, Note 1.)

THE TEXAS CONSTITUTION

ARTICLE 8. TAXATION AND REVENUE

Sec. 1. EQUALITY AND UNIFORMITY; TAX IN PROPORTION TO VALUE; INCOME TAX; EXEMPTION OF CERTAIN TANGIBLE PERSONAL PROPERTY FROM AD VALOREM TAXATION. (a) Taxation shall be equal and uniform.

(b) All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

(c) The Legislature may provide for the taxation of intangible property and may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this State. Subject to the restrictions of Section 24 of this article, it may also tax incomes of both natural persons and corporations other than municipal. Persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax.

(d) The Legislature by general law shall exempt from ad valorem taxation household goods not held or used for the production of income and personal effects not held or used for the production of income. The Legislature by general law may exempt from ad valorem taxation:

(1) all or part of the personal property homestead of a family or single adult, "personal property homestead" meaning that personal property exempt by law from forced sale for debt;

(2) subject to Subsections (e) and (g) of this section, all other tangible personal property, except structures which are substantially affixed

to real estate and are used or occupied as residential dwellings and except property held or used for the production of income;

(3) subject to Subsection (e) of this section, a leased motor vehicle that is not held primarily for the production of income by the lessee and that otherwise qualifies under general law for exemption; and

(4) one motor vehicle, as defined by general law, owned by an individual that is used in the course of the individual's occupation or profession and is also used for personal activities of the owner that do not involve the production of income.

(e) The governing body of a political subdivision may provide for the taxation of all property exempt under a law adopted under Subdivision (2) or (3) of Subsection (d) of this section and not exempt from ad valorem taxation by any other law. The Legislature by general law may provide limitations to the application of this subsection to the taxation of vehicles exempted under the authority of Subdivision (3) of Subsection (d) of this section.

(f) The occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business.

(g) The Legislature may exempt from ad valorem taxation tangible personal property that is held or used for the production of income and has a taxable value of less than the minimum amount sufficient to recover the costs of the administration of the taxes on the property, as determined by or under the general law granting the exemption.

(h) The Legislature may exempt from ad valorem taxation a mineral interest that has a taxable value of less than the minimum amount sufficient to recover the costs of the administration of the taxes on the interest, as determined by or under the general law granting the exemption.

(i) Notwithstanding Subsections (a) and (b) of this section, the Legislature by general law may limit the maximum appraised value of a residence homestead for ad valorem tax purposes in a tax year to the lesser of the most recent market value of the residence homestead as determined by the appraisal entity or 110 percent, or a greater percentage, of the appraised

value of the residence homestead for the preceding tax year.  A limitation on appraised values authorized by this subsection:

(1)  takes effect as to a residence homestead on the later of the effective date of the law imposing the limitation or January 1 of the tax year following the first tax year the owner qualifies the property for an exemption under Section 1-b of this article; and

(2)  expires on January 1 of the first tax year that neither the owner of the property when the limitation took effect nor the owner's spouse or surviving spouse qualifies for an exemption under Section 1-b of this article.

(j)  The Legislature by general law may provide for the taxation of real property that is the residence homestead of the property owner solely on the basis of the property's value as a residence homestead, regardless of whether the residential use of the property by the owner is considered to be the highest and best use of the property.

(Amended Nov. 7, 1978, and Nov. 3, 1987; Subsecs. (b) and (f) amended Nov. 7, 1989; Subsec. (e) amended Aug. 10, 1991; Subsec. (c) amended Nov. 2, 1993; Subsec. (d) amended and (g) and (h) added Nov. 7, 1995; Subsec. (i) added Nov. 4, 1997; Subsecs. (d) and (e) amended Nov. 2, 1999; Subsec. (d) amended and former (j) and (j-1) added Nov. 6, 2001; Subsec. (d) amended, (i-1) added, and (j) repealed Sept. 13, 2003; Subsec. (j-1) expired Jan. 1, 2004; Subsec. (i-1) expired Jan. 1, 2005; Subsecs. (d) and (i) amended Nov. 6, 2007; current Subsec. (j) added Nov. 3, 2009.)

Sec. 59. CONSERVATION AND DEVELOPMENT OF NATURAL RESOURCES AND PARKS AND RECREATIONAL FACILITIES; CONSERVATION AND RECLAMATION DISTRICTS. (a) The conservation and development of all of the natural resources of this State, and development of parks and recreational facilities, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

(c) The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment. All such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law. The Legislature shall also authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds and for the maintenance of such districts and improvements. Such indebtedness shall be a lien upon the property assessed for the payment thereof. The Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against

any reclamation district unless such proposition shall first be submitted to the qualified voters of such district and the proposition adopted.

(c-1) In addition and only as provided by this subsection, the Legislature may authorize conservation and reclamation districts to develop and finance with taxes those types and categories of parks and recreational facilities that were not authorized by this section to be developed and financed with taxes before September 13, 2003. For development of such parks and recreational facilities, the Legislature may authorize indebtedness payable from taxes as may be necessary to provide for improvements and maintenance only for a conservation and reclamation district all or part of which is located in Bexar County, Bastrop County, Waller County, Travis County, Williamson County, Harris County, Galveston County, Brazoria County, Fort Bend County, or Montgomery County, or for the Tarrant Regional Water District, a water control and improvement district located in whole or in part in Tarrant County. All the indebtedness may be evidenced by bonds of the conservation and reclamation district, to be issued under regulations as may be prescribed by law. The Legislature may also authorize the levy and collection within such district of all taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of the bonds and for maintenance of and improvements to such parks and recreational facilities. The indebtedness shall be a lien on the property assessed for the payment of the bonds. The Legislature may not authorize the issuance of bonds or provide for indebtedness under this subsection against a conservation and reclamation district unless a proposition is first submitted to the qualified voters of the district and the proposition is adopted. This subsection expands the authority of the Legislature with respect to certain conservation and reclamation districts and is not a limitation on the authority of the Legislature with respect to conservation and reclamation districts and parks and recreational facilities pursuant to this section as that authority existed before September 13, 2003.

(d) No law creating a conservation and reclamation district shall be passed unless notice of the intention to introduce such a bill setting forth the general substance of the contemplated law shall have been published at least thirty (30) days and not more than ninety (90) days prior to the introduction thereof in a newspaper or newspapers having general circulation in the county or counties in which said district or any part thereof is or will be located and by delivering a copy of such notice and such bill to the Governor

who shall submit such notice and bill to the Texas Water Commission, or its successor, which shall file its recommendation as to such bill with the Governor, Lieutenant Governor and Speaker of the House of Representatives within thirty (30) days from date notice was received by the Texas Water Commission. Such notice and copy of bill shall also be given of the introduction of any bill amending a law creating or governing a particular conservation and reclamation district if such bill (1) adds additional land to the district, (2) alters the taxing authority of the district, (3) alters the authority of the district with respect to the issuance of bonds, or (4) alters the qualifications or terms of office of the members of the governing body of the district.

(e) No law creating a conservation and reclamation district shall be passed unless, at the time notice of the intention to introduce a bill is published as provided in Subsection (d) of this section, a copy of the proposed bill is delivered to the commissioners court of each county in which said district or any part thereof is or will be located and to the governing body of each incorporated city or town in whose jurisdiction said district or any part thereof is or will be located. Each such commissioners court and governing body may file its written consent or opposition to the creation of the proposed district with the governor, lieutenant governor, and speaker of the house of representatives. Each special law creating a conservation and reclamation district shall comply with the provisions of the general laws then in effect relating to consent by political subdivisions to the creation of conservation and reclamation districts and to the inclusion of land within the district.

(f) A conservation and reclamation district created under this section to perform any or all of the purposes of this section may engage in fire-fighting activities and may issue bonds or other indebtedness for fire-fighting purposes as provided by law and this constitution.

(Added Aug. 21, 1917; Subsec. (d) added Nov. 3, 1964; Subsec. (e) added Nov. 6, 1973; Subsec. (f) added Nov. 7, 1978; Subsec. (c) amended Nov. 2, 1999; Subsec. (a) amended and (c-1) added Sept. 13, 2003.) (TEMPORARY TRANSITION PROVISIONS for Sec. 59: See Appendix, Note 1.)

Sec. 68. ASSOCIATIONS OF AGRICULTURAL PRODUCERS; ASSESSMENTS ON PRODUCT SALES TO FINANCE PROGRAMS OF MARKETING, PROMOTION, RESEARCH, AND EDUCATION. The legislature may provide for the advancement of food and fiber in this state by providing representative associations of agricultural producers with authority to collect such refundable assessments on their product sales as may be approved by referenda of producers. All revenue collected shall be used solely to finance programs of marketing, promotion, research, and education relating to that commodity.

(Added Nov. 8, 1983.)